**SWANN OIL, INC., Plaintiff,**

v.

**KEYSTONE PORTLAND CEMENT COMPANY.**

Civ. A. No. 74-2158.

United States District Court,
E. D. Pennsylvania.

Dec. 6, 1974.

L. Carter Anderson, Rawle & Henderson, Henry H. Janssen, Philadelphia, Pa., for plaintiff.

Ralph W. Brenner, Montgomery, McCracken, Walker & Rhoads, Peter B. Broida, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

Plaintiff seeks judgment for an unpaid bill for the sale and delivery in January, 1974 of a large quantity of No. 6 residual fuel oil. There is no diversity jurisdiction. Federal jurisdiction is claimed under the Emergency Petroleum Allocation Act (EPA).[1] There are also common-law counts based upon pendent jurisdiction for breach of contract quantum meruit, and fraud. Defendant has moved to dismiss the complaint for lack of subject-matter jurisdiction (Fed.R.Civ.P. 12(b)(1)), and failure to state a cause of action upon which relief can be granted (Fed.R.Civ.P. 12(b)(6)). The motion to dismiss will be granted.

In 1972 plaintiff agreed by written contract to sell defendant "approximately 415,000 gallons of # 6 residual fuel oil per month" commencing February 1, 1972 and continuing through December 31, 1974. Mandatory petroleum allocation regulations promulgated pursuant to the EPA became effective on December 27, 1973. Plaintiff, claiming that the EPA and its regulations constituted a *force majeure* advised defendant that the contract was no longer in effect.[2]

---

1. 15 U.S.C.A. § 753 et seq. (Supp.1974).

2. The written contract itself had a *"force majeure"* clause including "action of any governmental authority."

The complaint alleges that on January 4, 1974

defendant agreed that a new contract, effective January 1, 1974, would be executed which would provide, *inter alia*, for new pricing based on plaintiff's posted prices.[3]

The complaint further alleges that at the time defendant agreed to the new pricing

plaintiff [sic—defendant] had decided never to pay any new pricing formula for deliveries on and after December 27, 1973 and during January, 1974. Defendant made these intentionally false and fraudulent misrepresentations in order to induce plaintiff to supply residual fuel oil to defendant.[4]

Finally, the complaint alleges that in various letters from defendant to plaintiff there was a willful concealment of material facts "concerning defendant's intention not to pay for residual fuel oil on a new pricing basis." [5]

Under EPA regulations, each supplier was to make pro-rata allocations from its "allocable supplies" [6] on a monthly basis to all its customers during the corresponding "base period." [7] The "base period" was defined as the corresponding month of 1973.[8] Residual fuel oil users, not otherwise expressly covered in the regulations, were to receive up to 100% of the "base period" supply.[9]

The complaint alleges that notwithstanding the terms of the written contract, plaintiff supplied no fuel oil to defendant during the corresponding "base period" months. Thus, according to plaintiff, defendant was not entitled, as of right, to any allocation of fuel oil as

an existing "base period" customer. The regulations "required" (10 C.F.R. § 200.14(d), 39 Fed.Reg. 748), or "encouraged" (10 C.F.R. § 200.60(a)) allocations to "new customers." However, a supplier was not required to sell to a purchaser unless proper credit or payment arrangements were made.[10] Regulations also established ceiling prices but did not fix minimum prices.

The heart of plaintiff's contentions as to federal district court jurisdiction is that plaintiff has suffered a legal wrong because of an act or practice arising out of the EPA and the regulations adopted pursuant thereto. Section 5(a)(1) of the EPA, 15 U.S.C.A. § 754(a)(1) (Supp.1974), adopts by reference Sections 210 and 211 of the Economic Stabilization Act of 1970. 12 U.S.C.A. § 1904 (Supp.1974).

Section 210(a) of the Economic Stabilization Act of 1970 provides:

Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.

Section 211(a) of the same statute provides:

The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder,

3. ¶8 of Complaint.

4. ¶9 of Complaint.

5. ¶¶ 10, 11 and 12 of Complaint.

6. 10 C.F.R. § 200.58(a), 39 Fed.Reg. 756.

7. 10 C.F.R. § 200.60, 39 Fed.Reg. 757.

8. 10 C.F.R. § 200.58(f).

9. 10 C.F.R. § 200.59(d).

10. 10 C.F.R. § 200.15, 39 Fed.Reg. 748–49. Normal Business Practice.

Suppliers will deal with purchasers according to normal business practices. Nothing in this program shall be construed to require suppliers to sell to purchasers who do not arrange proper credit or payments for products. However, no supplier may require or impose discriminatively more stringent credit terms or payment schedules on purchasers than the normal business practices of the supplier, nor may any supplier modify any other normal business practice so as to result in circumvention of any provision of this chapter.

notwithstanding the amount in controversy: except that nothing in this subsection or in subsection (h) of this section affects the power of any court of competent jurisdiction to consider, hear, and determine any issue by way of defense (other than a defense based on the constitutionality of this title or the validity of action taken by any agency under this title) raised in any proceeding before such court. If in any such proceeding an issue by way of defense is raised based on the constitutionality of this title or the validity of agency action under this title, the case shall be subject to removal by either party to a district court of the United States . . . .

The complaint refers to but two regulations adopted pursuant to the EPA; namely, 10 C.F.R. §§ 210.82(d) and 210.-83(b), 39 Fed.Reg. 1932. Section 210.-83(b) using almost the identical language of Section 210(a) of the Economic Stabilization Act of 1970 provides that anyone suffering "legal wrong because of any act or practice arising out of the provisions of" the rules and regulations adopted under the EPA shall be entitled to the relief provided under the Economic Stabilization Act.

Section 210.82(d) provides under the heading of Sanctions—Other Penalties:

Willful concealment of material facts, or false or fictitious or fraudulent statements or representations, or willful use of any false writing or document containing false, fictitious or fraudulent statements pertaining to matters within the scope of the Act shall be subject to the criminal penalties provided by 62 Stat. 749, 18 U.S.C. 1001.

The jurisdictional question is primarily whether the alleged facts constitute a "legal wrong because of an act or practice arising out of" the EPA and its regulations. Plaintiff alleges that it was induced to sell defendant fuel oil upon defendant's false promise to pay the new and higher prices. Specifically, plaintiff contends that regulation 210.82(d), which makes willful concealment of material facts pertaining to matters within the scope of the EPA a criminal offense subject to prosecution under 18 U.S.C. § 1001, creates by inference a civil cause of action for damages, which may be litigated in federal district court.

■ This litigation in substance is no more than an ordinary breach of contract action. Because of the allegations that defendant, at the time of entering into the new pricing agreement never intended to comply with such terms, plaintiff has the alternative of seeking damages in tort. In either event, plaintiff can maintain the action and establish the essential proofs without reference to the EPA or any of its regulations. Plaintiff alleges that there was a pre-existing contract between the parties; that by reason of the regulations adopted pursuant to the EPA, the parties agreed to a new contract calling for higher prices for oil deliveries; and that defendant has failed to pay these higher prices. The breach of contract failure to pay according to the new prices and/or the fraudulent concealment of an intent not to pay the new prices at the time the new prices were agreed upon, does not constitute an "act or practice arising out of" the EPA or any regulations promulgated thereunder. I likewise fail to find that any legal wrong occurring to plaintiff was "because of any act or practice arising out of" the EPA or regulations promulgated thereunder. The legal wrong suffered, occurred wholly independently of the EPA and its regulations. The failure to pay and/or the failure to disclose an intention never to pay did not constitute any matter, act or practice arising out of the EPA or its regulation, and did not in anyway come within the scope of the EPA. Under the facts alleged in this complaint, the failure to pay for fuel oil delivered, in accordance with agreed upon prices does not constitute a violation of the EPA.

Plaintiff argues that because of the regulations, defendant had to be considered a "new customer" and therefore any oil sold to him would reduce allocations available to existing customers, thereby directly causing a legal wrong arising out of the EPA and regulations. Even if these assumptions are correct that (1) plaintiff had to accept defendant as a new customer and (2) by so doing it would necessarily reduce the supplies or allocations that existing customers would receive,[11] such would have caused no legal harm *to plaintiff.*

Plaintiff also contends that because the pricing regulations permit a supplier to pass through to its customers increased costs, any failure to pay an account due, or any sale at a lower price under the pre-existing contract would increase the charges to other customers. No portion of the EPA or its regulations, support such a contention. Section 212.93(a), 39 Fed.Reg. 1959, of the regulations permits price increases where existing prices "result in recoupment of less total revenue than the total amount of increased costs of that product." I cannot interpret this to mean that uncollected or uncollectible accounts receivable would permit any increase in prices, and no case or other authority has been cited for such a proposition. Again, even if such a contention is sound it would not cause any legal wrong *to plaintiff* because of any act or practice arising out of the EPA or its regulations. The wrong done, if any, would be to the other customers.

■ Plaintiff and defendant had an existing written contract, executed prior to the adoption of the EPA, for the sale and purchase of quantities of residual fuel oil with a determinable pricing formula. Plaintiff contends that the passage of the EPA and regulations adopted pursuant thereto constituted a *force majeure* invalidating the existing contract.[12] Thereupon, plaintiff and defendant are alleged to have entered into a new contract providing for new pricing based on plaintiff's posted prices, presumedly being the maximum permitted under EPA and its regulations and in excess of that called for in the pre-existing written contract. The main purpose of the EPA appears to be to allocate equitably scarce petroleum products among the nation's users and to establish fair ceiling prices. Otherwise the EPA was to disrupt normal business practices, contracts and supplier-purchaser relationships as little as possible. (See footnote 10). There is nothing in the EPA or its regulations that suggests an intention to place ordinary contractual relations or disputes under the jurisdiction of the federal courts.

■ One of plaintiff's major contentions is that because § 210.82(d) provides for criminal prosecution for "willful concealment of material facts

---

11. Both assumptions are very doubtful. As noted previously § 200.14(e) states that all wholesalers (subject to certain qualifications) are *required* to accept as purchasers "all (1) new customers without a historical supplier." § 200.60(a) on the other hand specifically referring to residual fuel oil supplies states *inter alia*: "Suppliers are *encouraged* to accept new customers whenever possible and may be directed to do so by the Federal Energy Office." As to the contention that any allocation to defendant would necessarily reduce allocations to other existing customers, § 200.59(d) provides that "all other users of residual fuel oil not covered elsewhere in this subpart shall be allocated their current requirements up to 100 percent of their base period supply unless otherwise specified by the FEO." [emphasis added].

12. § 200.7 of the regulations provides:
    *Force Majeure.*
    The regulations in this chapter with respect to the allocation of products subject to this chapter, to the extent required to accomplish the purposes of the Act, supersede the provisions of any private agreement, understanding or contractual arrangement to the extent that any such arrangement is inconsistent with the provisions of this chapter, or the purposes of the Act. It shall be a defense to any legal proceeding brought for breach of any such private agreement, understanding or contractual arrangement that such breach resulted solely from compliance with any provision of this chapter.

**1304**

. . . or willful use of any false writing . . . containing false statements pertaining to matters within the scope of the Act . . .", a violation of such regulation would give rise to a civil cause of action. This is based by analogy to the principle of Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946), where a civil cause of action was carved out of the so-called 10(b) criminal anti-fraud provisions of the Securities Exchange Act of 1934. Although this contention appears to raise a legal issue of first impression as to the applicability of regulations § 210.-82(d) of the EPA, I do not deem it necessary to be presently decided. This case, assuming a willful concealment of material facts and/or willful use of false writings so that defendant although agreeing to pay the higher prices never intended to pay the same, does not appear to pertain "to matters within the scope of the Act." The act does not purport to prevent, or control agreements or contracts raising the prices for the sale of residual oil up to the maximum permitted by the EPA and its regulations. An agreement for so doing, neither pertains to matters within the scope of the Act, nor does the breach of such an agreement whether fraudulently preconceived, or otherwise, constitute an act or practice arising out of the EPA or its regulations. Moreover, an action for such breach, whether sounding in contract or tort, does not cause any legal wrong due to an act or practice arising out of the EPA or its regulations.

Finally, it should be noted that if plaintiff's contentions are correct, in most, if not all, cases where there is a nonpayment of a fuel oil bill, regardless of the amount of such bill, action could be instituted in federal court. All that would be required would be an allegation that the price had been agreed upon, but that the purchaser never intended paying the price. To be sure that the case would not be dismissed if the evidence failed to prove "willful concealment of material facts or false or fictitious or fraudulent statements or representa-

tions, or willful use of any false writing or document containing any false, fictitious or fraudulent statement," the complaint need only assert the doctrine of pendent jurisdiction with common-law counts for breach of express contract, quantum meruit, and fraud. Had the EPA intended to so extend federal jurisdiction, the Act could have been express in so doing. To interpret the EPA as so extending federal court jurisdiction would constitute, in my opinion, judicial legislation.

The basis of counts 2, 3 and 4 is solely that of pendent jurisdiction. There being no basis for independent federal jurisdiction under count 1, there is likewise no jurisdiction to determine asserted state-court claims under the doctrine of pendent jurisdiction under the remaining counts.