**EXXON CORPORATION, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**UNITED STATES DEPARTMENT OF ENERGY, Third-Party Defendant-Petitioner,**

v.

**JARVIS CHRISTIAN COLLEGE, The Meredith Foundation, Norma Rutherford and Frank Morrison, Jr., Plaintiffs-Respondents,**

and

**Exxon Corporation, Defendant-Respondent.**

Nos. DC–85, 5–59.

Temporary Emergency Court of Appeals.

Argued May 18, 1981.

Decided June 30, 1981.

As Amended July 20, 1981.

David J. Beck, Fulbright & Jaworski, Houston, Tex., with whom David L. Tolin and Ronald D. Secrest, Houston, Tex.,

David R. Johnson, John M. Simpson, and Marc E. Chafetz, of Fulbright & Jaworski, Washington, D. C., and Barbara Finney, Exxon Corp., Houston, Tex., were on the brief, for Exxon Corp.

Larry P. Ellsworth, Dept. of Energy, Washington, D. C., with whom Thomas S. Martin, C. Max Vassanelli, and Richard A. Levie, Dept. of Justice, Washington, D. C., Daniel F. Shea, and George Kielman, Dean S. Cooper, and Gilbert T. Renaut, Dept. of Energy, Washington, D. C., were on the brief, for United States of America and United States Department of Energy.

William J. Murphy, Williams & Connolly, Washington, D. C., with whom Paul Martin Wolff, Washington, D. C., and Haynes & Boone, George W. Bramblett, Jr., and Noel M. B. Hensley, Dallas, Tex., and Wilson, Miller, Spivey, Sheehy, Knowles & Hardy, and John C. Hardy, Tyler, Tex., were on the motion, for plaintiffs-respondents in No. 5–59.

Before INGRAHAM, JAMESON and ZIRPOLI, Judges.

JAMESON, Judge.

This appeal involves the accommodation of two related actions in which Exxon is a defendant, and which pose the threat of conflicting decisions on identical issues. Exxon appeals from a preliminary injunction issued by the District Court for the District of Columbia in *United States of America v. Exxon Corporation*, ("D.C. Action"), ordering Exxon to dismiss its "Counterclaim, Joinder and Third Party Action" filed in *Jarvis Christian College, et al. v. Exxon Corporation* in the Eastern District of Texas, Tyler Division ("*Jarvis*"), "insofar as ... [it] purports to state claims against the Department of Energy" (DOE). The injunction also orders Exxon to refrain from litigating in any other forum the issues involved in the D.C. action.

Following the entry of an order of this court staying the preliminary injunction in the D.C. action, the DOE petitioned the court to issue a supervisory writ to the Texas court staying proceedings in the *Jarvis* action until the appeal from the injunction in the D.C. court was decided. A stay was granted pending further order of this court.

It is undisputed that the D.C. action and *Jarvis* action involve duplicative litigation with respect to pricing regulations of the DOE. This court is now confronted with the problem of determining the proper forum for deciding the pricing issues, while assuring that all parties in both the D.C. and *Jarvis* actions will be bound by the decision. Since we resolve this dilemma by exercising our supervisory powers, we do not reach the specific questions raised by Exxon's appeal relating to comity and the propriety of injunctive relief.[1] By so doing, we heed our statutory duty to "exercise [our] powers ... in such manner as to expedite the determination of cases over which [we] have jurisdiction ...." ESA § 211(b)(1), 12 U.S.C. § 1904 note.

*Factual and Procedural Background*[2]

Exxon is the Unit Operator of the Hawkins Field Unit ("HFU"), a unitized property in Texas comprised of more than 200 crude oil producing leases. Exxon also owns the largest working interest in the HFU and is entitled to about two-thirds of

---

1. This court's power to supervise the litigation of the pricing issues derives from 28 U.S.C. § 1651(a), which provides:

 The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

 This court has "the powers of a circuit court of appeals with respect to the jurisdiction conferred on it" by Congress. § 211 of the Economic Stabilization Act of 1970 (ESA) 12 U.S.C. § 1904 note, as incorporated by 15 U.S.C. § 754(a)(1). In a previous order issued February 9, 1981, we held that we have jurisdiction over the present appeal by virtue of § 211(b)(2) of the ESA, as incorporated and amended, 15 U.S.C. § 751 *et seq.* See also *Hamilton v. Morial*, 644 F.2d 351, 353–54 (5 Cir. 1981).

2. In resolving the problem now presented to this court as a result of procedural maneuvering by all parties, it is necessary to set forth in some detail proceedings in both the D.C. action and *Jarvis*.

the crude oil produced. There are over 300 working interest owners and about 2,200 royalty or overriding royalty interest owners in the unit.

The other working and royalty interest owners take their share of HFU crude oil in kind and sell to various purchasers, including Exxon. Exxon purchases about 93.6% of the oil produced from the HFU leases, and in turn sells about 21% of the total HFU production, using the remainder in its own refining operations. The 6.4% of HFU oil not purchased by Exxon is sold by other working interest owners to third parties or used in their own refining operations.

The *Jarvis* plaintiffs own royalty interests in Exxon's holdings. They have division orders with Exxon which allow Exxon to take delivery of the oil to which their royalty interests entitle them in exchange for monthly payment by Exxon of the posted price for HFU oil. Exxon establishes the posted price for the unit.

On January 10, 1978, the DOE issued a Notice of Probable Violation (NOPV) to Exxon, charging pricing violations in the sale of HFU crude since 1975. The DOE alleged that Exxon, as operator of the HFU, improperly characterized much of the unit's production as "new" oil and thus the posted price for the unit exceeded the maximum allowable price under the regulations then in effect. Exxon responded to the NOPV. On April 11, 1978, Exxon and several royalty interest owners filed suit in the Northern District of Texas, seeking declaratory relief on the same issues raised in the DOE's enforcement proceeding.[3]

In June, 1978, the DOE withdrew the NOPV and instituted the D.C. action, seeking to hold Exxon liable for all overcharges on the sale of HFU oil, with the overcharges payable to the United States Treasury. Exxon moved to transfer the D.C. action to the Northern District of Texas. The court denied this motion on August 3, 1978. Exxon also moved to dismiss the D.C. action for lack of subject matter jurisdiction, contending that the Government must exhaust administrative procedures before bringing an enforcement action in the district court. The court denied Exxon's motion. *United States v. Exxon Corp.*, 470 F.Supp. 674, 675 (D.D.C.1979). This court affirmed that ruling on appeal. *Exxon Corp. v. United States*, 616 F.2d 526, 528 (TECA 1980).

In June, 1979, Exxon's declaratory judgment action was transferred from the Northern District of Texas to the District of Columbia, where the D.C. action was pending. In August, 1979, Exxon and its co-plaintiffs filed notices of dismissal of the declaratory judgment action on the asserted basis that identical issues were raised in the DOE's enforcement action. Believing the notices were ineffective due to a pending motion for a stay, the court entered an order of dismissal without prejudice on October 16, 1979.

Both Exxon and the DOE filed motions to compel discovery, which were largely granted on August 9, 1980. Extensive discovery has been conducted since then. During oral argument, the parties indicated that the final documents should be produced at an early date.

On August 26, 1980, Exxon again moved to dismiss the D.C. action for lack of indispensable parties, namely the other interest owners in the HFU. The court held the motion in abeyance pending this court's decision in *Sauder v. DOE*, 648 F.2d 1341 (Em.App.1981). In December, 1980, Exxon petitioned to interplead the other interest owners and posted a $16,000,000 interpleader bond. The court also withheld ruling on

---

**3.** The four issues, which are not before us on this appeal, are (1) whether the HFU is a single property or separate leases under 10 C.F.R. § 212.72 of the DOE's Mandatory Petroleum Price Regulations; (2) assuming the HFU is a single property, when a significant alteration in producing patterns occurred, establishing a unit base control level for pricing purposes under 10 C.F.R. § 212.72; (3) whether Exxon can be held liable for all overcharges; and (4) whether overcharges should be paid to the United States Treasury. The second issue is the key factual question to be litigated at trial. The others are legal questions which Exxon disputes.

the petition pending the outcome of *Sauder*.[4]

Meanwhile, in October, 1980, Exxon notified HFU royalty owners it would begin withholding 40–45% of its payments under its purchase agreements to meet the possible overcharge liability in the D.C. action. In response, the *Jarvis* plaintiffs filed suit in state court in Texas alleging conversion, breach of contract and fiduciary duty. The *Jarvis* plaintiffs maintained that Exxon could not withhold part of their contractual payments unless and until the D.C. court determined the posted price to be unlawful. Exxon removed the case to federal court in the Eastern District of Texas on November 19, 1980. At the same time, Exxon filed an answer to the *Jarvis* complaint and a separate "Counterclaim, Joinder and Third Party Action" against the DOE raising the same issues as are involved in the D.C. action. Exxon asserted that the pricing and regulatory issues must be decided before it can be compelled to pay the contract price for oil purchased from royalty owners. Exxon continues to argue that if the price is held unlawful, then the contracts with the royalty owners cannot be enforced.

Exxon withheld part of its payments to the *Jarvis* plaintiffs and other royalty owners for about four months, until President Reagan signed Executive Order No. 12287, decontrolling oil prices, on January 28, 1981. As noted above, the alleged pricing violations had continued for five and one-half years.

The *Jarvis* plaintiffs moved to remand the case to state court on the grounds that there was not complete diversity of citizenship and the federal regulatory issues were not relevant to its tort and contract claims against Exxon. The court declined to remand and set the case on an expedited schedule for trial within ninety days. The court also granted leave to Exxon and the *Jarvis* plaintiffs to implead the DOE, which had not answered Exxon's pleading. The

*Jarvis* plaintiffs again tried to sever Exxon's claims against the DOE from their suit by a motion to dismiss or sever the counterclaims against them. The court denied the motions.

Instead of answering Exxon's pleading, or seeking a stay of the *Jarvis* suit by the Texas court, the DOE petitioned the D.C. court for an injunction ordering Exxon to dismiss its pleading in the *Jarvis* case insofar as it raised claims against the DOE, and enjoining Exxon from litigating the pricing and regulatory issues in any other forum than the D.C. action. The D.C. court initially denied the preliminary injunction, but on reconsideration granted it on January 13, 1981. On January 23, 1981, the court modified the injunction in an attempt to allay Exxon's fear that if it filed a notice of dismissal the "two-dismissal" provision of Fed.R.Civ.P. 41(a)(1) would apply and Exxon's compliance with the injunction would operate as an adjudication on the merits of the regulatory issues.

Exxon filed concurrent notices of appeal to the Court of Appeals for the District of Columbia Circuit and this court, with emergency motions for stay pending appeal. The D.C. Circuit denied the stay and expressed no opinion on whether it had jurisdiction over the appeal. This court took jurisdiction on February 9, 1981 and granted Exxon's motion for an emergency stay pending appeal. At that time we also advised the parties that we would "entertain a proper motion or petition filed by any present or future party in the Texas case seeking a stay of the proceedings there."

The DOE promptly requested an emergency stay of the *Jarvis* case pending appeal. On February 13, 1981, we entered an order staying the *Jarvis* proceedings pending further order of this court. The DOE also petitioned for a supervisory writ to govern the *Jarvis* case, as well as filing several motions in the district court in Texas to stay or transfer the case to the Dis-

---

4. *Sauder* involved an operator of a field not covered by a formal unitization agreement. There, as here, the DOE held the operator solely liable for the overcharges, without joining the other interest owners in the enforcement proceeding. The district court affirmed the DOE's remedial order, and this court in turn affirmed on appeal.

trict of Columbia. The Texas court has not ruled on any of these motions because of the stay imposed by this court. The *Jarvis* plaintiffs have moved to dissolve the stay of their suit, at least as to their claims, which they continue to argue are separate from the pricing and regulatory issues.

Numerous briefs and voluminous documents have been filed in connection with this appeal and the various motions associated with it. At oral argument we heard from the *Jarvis* plaintiffs as well as Exxon and the DOE concerning, *inter alia*, the propriety of transferring the *Jarvis* suit to the District of Columbia or staying further proceedings in *Jarvis* pending final determination of the D.C. action.

### Contentions of Parties

 As noted above, we find it unnecessary to consider in detail the contentions of the parties with respect to the propriety of the preliminary injunction.[5] There is no question that the D.C. action and *Jarvis* action both involve the same pricing and regulatory issues. Both Exxon and the DOE invoke principles of comity and judicial self-restraint to argue why their preferred court should decide these issues. Each attacks the procedural approach of the other party. Each purports to promote efficient judicial administration, but there is little evidence of any real effort to cooperate in resolving the procedural problem. Rather, both have adopted strategies which have turned the litigation into a procedural maze.

After reading the voluminous briefs, motions and supporting documents, we requested the parties to address four specific questions at oral argument: (1) whether this court should stay the *Jarvis* case pursuant to the DOE's petition for a supervisory writ pending a final determination in the D.C. action; (2) whether we should order the *Jarvis* case transferred for consolidation with the D.C. action; (3) if consolidation is appropriate, whether the parties should be joined under Fed.R.Civ.P. 19, Exxon's interpleader petition, or some other procedure; and (4) whether the decision in *Sauder v. DOE, supra*, has any impact on this case. Because the *Jarvis* plaintiffs have a direct interest in these issues, they requested and we granted leave for them to be heard at oral argument. The parties took the following positions on those questions:

*Exxon*: Exxon reiterated the statement in its brief that it would not oppose either a stay or transfer of the *Jarvis* case, as long as all parties would be bound by the decision on the pricing issue. Exxon stressed the extraordinary nature of a supervisory writ, however, and favored allowing the Texas court to first rule on the DOE's pending motions before this court should exercise supervisory powers.

Exxon questioned whether venue and jurisdiction would be proper in the District of Columbia if the *Jarvis* plaintiffs were to be joined under Rule 19, but noted no such problems would arise in the Texas court. As to the effect of *Sauder*, Exxon sought to distinguish that case from the present controversy on the ground that *Sauder* involved agency discretion to hold an operator liable, and noted that Judge Flannery had not yet exercised any discretion on that issue, so there is none to review. Exxon proposed two alternatives open to this court: (1) dissolve the injunction and stay of the *Jarvis* case, and allow the Texas

---

5. We note that it is generally appropriate in preventing duplicative litigation for the party objecting to the second suit to first seek relief *in the second court*—here the Texas court—before asking for an injunction from the first court. See *Bergh v. State of Washington*, 535 F.2d 505, 507 (9th Cir. 1976) (dismissal by second court proper if same issues being litigated elsewhere); *Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620, 623 (D.C.Cir. 1975) (plaintiff sought stay or transfer in second court and writ of mandamus in court of appeals before obtaining injunction); *American Chemical Paint Co. v. Thompson Chemical Corp.*, 244 F.2d 64, 66 (9 Cir. 1957) and *Hinton v. Seaboard Air Line Railway Co.*, 170 F.2d 892, 894 (4 Cir. 1948) (plaintiff first requested stay in second court before seeking injunction). Had the DOE taken that route, and had the Texas court denied relief, we could have acquired jurisdiction in a more orderly fashion. Now we are in the position of trying to bring order to this litigation without the benefit of the Texas district court's ruling.

court to act on the DOE's motion to transfer; and (2) shape appropriate relief under Rule 19 to limit the DOE's claims against Exxon solely to Exxon's share of alleged overcharges.

*DOE*: The DOE recognizes this court's power to transfer the *Jarvis* case to the District of Columbia without a specific request, under the authority of the All Writs Act, 28 U.S.C. § 1651. The DOE does not oppose transferring the *Jarvis* case in the event the order granting the preliminary injunction is not affirmed, but urges that the mechanics should be left to the discretion of the district court. The DOE argues that *Sauder* supports the Government's theory of operator liability and makes it clear that the *Jarvis* plaintiffs and other interest owners are not indispensable parties to this litigation.

*Jarvis Plaintiffs*: The *Jarvis* plaintiffs object to a transfer of their case to the D.C. court, again arguing that it would be inconvenient and unfair to require them to litigate their severable claims in a forum outside Texas. They note also that no party has requested transfer of the case.

The *Jarvis* plaintiffs also contend that Exxon's interpleader petition is improper because Exxon itself created the fund, and in addition, there is not complete diversity of citizenship because the Government is not a citizen. As to the effect of·*Sauder*, they agree with the DOE that it refutes Exxon's theory that the other interest owners (including the *Jarvis* plaintiffs) are indispensable parties to the litigation of the regulatory issues. The *Jarvis* plaintiffs urge us to modify the stay of their suit to allow them to proceed on their tort and contract claims in the Texas court, stating they will immediately seek summary judgment as to those issues.

*Remedy*

Although we do not decide the procedural issues raised by the injunction, it is necessary that we fashion an appropriate remedy to expedite the pending litigation. This is the second interlocutory appeal on procedural grounds, and three years have elapsed since the D.C. action was instituted. The unusual manner in which we acquired jurisdiction over both of the cases, and the numerous motions, petitions, and arguments made to this court in connection with this appeal "permit extraordinary action." See, *e. g., Hamilton v. Morial, supra; Koehring v. Hyde Constr. Co.*, 382 U.S. 362, 364 (1966). We therefore act under the authority of 28 U.S.C. § 1651, and pursuant to the duty imposed by ESA § 211(b)(1), 12 U.S.C. § 1904 note, to make provision for a resolution of the conflicting jurisdictional claims. To avoid waste of judicial time and resources, prevent duplicative discovery and trials, and eliminate the risk of inconsistent adjudications and races to obtain judgments (see *Columbia Plaza Corp. v. Security Nat. Bank, supra*, 525 F.2d at 626), we determine that the pricing and regulatory issues should be decided in one forum.

Considering all of the equitable factors which bear on the choice of forum, we conclude that the pricing and regulatory issues should be determined in the D.C. action. Accordingly we remand the D.C. action to the district court for further proceedings and continue the stay of all proceedings in the *Jarvis* action pending final determination of the D.C. action.[6] We conclude further that the *Jarvis* plaintiffs and other interest owners in the HFU should be permitted to intervene in the D.C. action if they wish to do so.

Under this disposition the final determination in the D.C. action will be binding upon all parties and duplicative litigation

---

**6.** Under this disposition the injunction entered in the D.C. action ordering Exxon to dismiss its counterclaim, joinder and third party action in *Jarvis* action is rendered moot. Exxon contends that the injunction against its litigating the same issues in any other forum, however, arguably would prevent Exxon from filing *amicus* briefs in other cases or from defending itself in other DOE enforcement actions. These questions are not now before the court. If Exxon should later be faced with the prospect of being precluded from representing its legitimate interests, it can seek relief from the district court and if necessary, by appeal to this court.

with the possibility of conflicting results will be avoided. It appears to the court also that the *Jarvis* plaintiffs will not be prejudiced by this remedy. They are now concerned only with the amounts withheld by Exxon over a four month period. They were paid the full contract price for the prior five years involved in the alleged price violations. At oral argument, counsel for Exxon stated that Exxon will pay the "highest interest applicable" on any amount they may owe the *Jarvis* plaintiffs upon the determination of the D.C. case. If the *Jarvis* plaintiffs desire an earlier determination of their contract and tort claims against Exxon, they may intervene in the D.C. action and move for summary judgment in that action.

IT IS ORDERED THAT:

(1) The District of Columbia action, *United States of America*, Plaintiff v. *Exxon Corporation*, Defendant, Civil Action No. 78–1035, is remanded to the district court for further proceedings;

(2) All proceedings in the action pending in the District Court for the Eastern District of Texas, Tyler Division, *Jarvis Christian College, The Meredith Foundation, Norma Rutherford and Frank Morrison, Jr.*, Plaintiffs v. *Exxon Corporation*, Defendant, and *United States Department of Energy*, Third-Party Defendant, Civil Action No. Ty–80–432, are stayed until final determination of the action in the District Court for the District of Columbia; and

(3) All plaintiffs in the action in the Texas court and all other interest owners in the HFU involved in these actions shall be permitted to intervene in the District of Columbia action if they wish to do so.