**UNITED STATES DEPARTMENT OF ENERGY, Petitioner,**

v.

**The Honorable Jane R. ROTH, United States District Judge for the District of Delaware, Respondent.**

No. 3–53.

Temporary Emergency Court of Appeals.

July 5, 1989.

Don W. Crockett, Arthur S. Weissbrodt, Gilbert T. Renaut, and Diane Hodes, Judicial Litigation Div., Economic Regulatory Admin., U.S. Dept. of Energy, and John R. Bolton, Asst. Atty. Gen., Civ. Div., Dept. of Justice, Washington, D.C., were on the brief, for petitioner.

James Baller, Mary Ann Hammett, Baller, Hammett, Williams, Grammer & Kissel, Washington, D.C. and William O. Lamotte, III, Morris, Nichols, Arsht & Tunnel, Wilmington, Del., and C.L. Carpenter, Sun Exploration and Production Co., Dallas, Tex., were on the brief, for respondent.

Before BECKER, BROWN and MAXWELL, Judges.

MEMORANDUM OPINION

MAXWELL, Judge.

The panel selected to dispose of the above-styled appeal, having examined the

briefs and appellate record, unanimously determined that oral argument would not materially assist in the determination of this appeal and recommended to Reynaldo G. Garza, Chief Judge of the Temporary Emergency Court of Appeals, that the matter be submitted for final disposition without oral argument, and the Chief Judge having concurred by Order entered herein, the matter, in accordance with Rule 27, General Rules of the Temporary Emergency Court of Appeals of the United States, was placed on the court's summary calendar for final disposition.

This matter is before this Court for review of an October 7, 1987 Memorandum Opinion of the Honorable Jane R. Roth, United States District Judge for the District of Delaware, denying the United States Department of Energy's [hereinafter DOE] Motion For Summary Judgment. The DOE, having filed a Petition For A Supervisory Writ pursuant to 28 U.S.C. § 1651 and Rule 21, Federal Rules of Appellate Procedure, urges this court to exercise its supervisory powers and compel the District Court for the District of Delaware to recognize that this court's ruling in *United States v. Exxon*, 773 F.2d 1240 (Temp.Emer.Ct.App.1985), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986) [hereinafter *"Hawkins Field"*], is controlling of the issues raised and suggested in the action below, *Sun Company v. United States*, 594 F.Supp. 652 (D.Del. 1984) [hereinafter *"Sun Company"*], and further, to direct the District Court to dismiss *Sun Company*. For the reasons hereinafter set forth, the Court declines to issue the writ.

The substantive and procedural background of this and related cases has been clearly and adequately summarized by the District Court and requires no further amplification other than as necessary to place our resolution of this matter in context.

Sun Company, Inc. and Sun Exploration and Production Company [collectively "Sun"] is an interest holder in a unitized oil field known as the "Hawkins Field Unit" [hereinafter HFU] which is operated by Exxon Company, the largest interest holder in the unit. Sun entered into a Consent Order with the DOE on September 11, 1980 whereby the DOE agreed, in essence, to forego the prosecution of asserted and unasserted civil claims adverse to Sun in return for a certain sum of money and the surrender of certain future rights belonging to Sun. Sun brought the civil action below on April 12, 1983 seeking a declaratory judgment that the DOE's proceeding against Exxon Corporation for the full amount of the HFU overcharges, pursuant to the federal petroleum price and allocation regulations, is precluded by the Consent Order insofar as the HFU overcharges were attributable to Sun's interest in the unit.

The DOE argues that the question Sun raises in the civil action below has previously been determined adversely to Sun by our opinion in *Hawkins Field*. In that case Exxon raised a question regarding the effect of the Sun–DOE Consent Order upon the two billion dollar judgment which the DOE had obtained against Exxon. Exxon sought an offset equal to the amounts collected by the United States on the basis of consent orders with those such as Sun who had held ownership and other interests in the HFU.

The trial court in *Exxon* determined that Exxon's liability for the full amount of overcharges attributable to the HFU rested upon Exxon's status as the operator of the HFU. On appeal Exxon claimed entitlement to a reduction of this liability, arguing that it cannot be held accountable for other charges attributable to the interests of others in the HFU who have previously entered into consent orders with the DOE. Inasmuch as Exxon was not a party to the consent orders and the settlements did not reference Exxon or the HFU, this Court determined Exxon's claim to be without merit and also noted that "Exxon's right of contribution, if any, from third parties are not now a subject of consideration by this Court." *Hawkins Field*, 773 F.2d at 1277, n. 36.

The DOE has taken the position that this court's determination in *Hawkins Field*—that the consent orders between

DOE and certain interest holders in the HFU did not entitle Exxon to a proportionate downward adjustment of its assessed liability—is also dispositive of the question of whether Sun, having earlier made full settlement with DOE, would be entitled to an offset against an Exxon claim for indemnification or contribution. In the event Exxon would be successful in its efforts to collect from Sun, the question would become whether Sun would be entitled to a proportionate refund of the earlier settlement Sun paid to the DOE. The DOE, having received a ruling in the negative on its position below, now seeks to have the District Court compelled to rule in the affirmative.

The supervisory writ of mandamus is an extraordinary remedy and, as such, must be reserved for extraordinary or exceptional situations. *Kerr v. United States*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976); *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967). "While the courts have never confined themselves to an arbitrary and technical definition of 'jurisdiction,' it is clear that only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Will v. United States*, 389 U.S. at 95, 88 S.Ct. at 273. It has also been held that the petitioner seeking the extraordinary writ of mandamus must establish his entitlement by a "clear and indisputable" showing. *Kerr v. United States*, 426 U.S. at 403, 96 S.Ct. at 2124.

It has been stated that "a promising new field has opened up for mandamus ... as an instrument to promote economical, even, and orderly administration of justice within [a] circuit" 9 *Moore's Federal Practice* ¶ 110.28; however, courts have also cautioned of the temptation of employing mandamus to "review nonappealable orders on the mere ground that they may be erroneous." *Will v. United States*, 389 U.S. at 98, n. 6, 275 n. 6. While the extraordinary remedy has been called upon to prevent a judge from proceeding contrary to a recent appellate decision, *Erie Bank v. United States District Court for the District of Colorado*, 362 F.2d 539 (10th Cir.1966) and

the net effect of the District Court's ruling upon the litigants must be calculated, *see* 9 *Moore's Federal Practice* ¶ 110.28 at 313, absent exceptional and compelling circumstances an appellate court should stay its hand, avoiding piecemeal litigation. "[M]andamus is not to be used as a substitute for an appeal, even though hardship may result from delay, and perhaps unnecessary trial." 8 *Federal Procedure*, L.Ed. § 20:437. Finally, it must be noted that the writ of mandamus has been viewed in the same light as equitable remedies, to be granted or withheld at the discretion of the Court, *see Roche v. Evaporated Milk Ass'n.*, 319 U.S. 21, 25–26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943), and should not issue where other adequate remedies are available. *Kerr v. United States*, 426 U.S. at 403, 96 S.Ct. at 2124.

In support of its petition for a supervisory writ the United States Department of Energy urges that the writ should issue directing the district court to follow this court's decision in *Hawkins Field* because the issue presented in the action below is identical to one of those determined by this court in *Hawkins Field*, namely, that the Sun–DOE consent order prohibited action against Sun's operators.

In *Hawkins Field* at page 1275, this court addressed the Sun consent order as it related to that litigation. Exxon, subject to a two billion dollar DOE assessment for the manner in which it operated its own as well as other ownership interests in the HFU, had urged that the consent order would affect the amount due from Exxon on that assessment. This court determined that Exxon's liability was based upon its status solely as an operator of the HFU and that its relationship with the interest holders *vis-a-vis* the HFU assessment would not be addressed by this court. It appears that the District Court in *Sun Company* will address that question inasmuch as Sun claims that certain rights flow from the consent order and seeks to have those rights determined. On the present state of the record, it is not clear and indisputable that the issues raised and suggested in *Sun Company* are identical to

certain of the issues heretofore determined by this court in *Hawkins Field*. The district court has initially determined that the issues raised with regard to the Sun consent order encompass far more than the Sun–Exxon–HFU relationship.

The DOE also urges that this Court has earlier issued supervisory writs under similar circumstances as those presented here, citing *Exxon Corp. v. United States*, 655 F.2d 1112 (Temp.Emer.Ct. of App.1981), in support thereof. In the case which the DOE cites this court was faced with the threat of conflicting decisions on identical issues being litigated in the United States District Court for the District of Columbia and the United States District Court for the Eastern District of Texas. The use of an extraordinary remedy was warranted in that case because it was undisputed that the District of Columbia and the Eastern District of Texas matters involved duplicative litigation with respect to pricing regulations of the DOE. The unusual nature of the parallel litigation was determined to be an exceptional situation warranting the use of the extraordinary remedy. This court does not believe that the issues presented here are as clear and compelling as those presented in *Exxon Corp. v. United States*.

Next the DOE urges that this Court has hinted that a supervisory writ "may reach proceedings inconsistent with a mandate or repugnant to a proper application of the doctrine of *stare decisis.*" Petition for a Supervisory Writ, 8. There is no question about the availability of the remedy and the court's authority and willingness to employ it in a proper case. DOE simply has not shown clearly and indisputably that this is the proper case.

Finally DOE urges that "duplicative and wasteful litigation will ensue if this court does not issue a supervisory writ." Petition for a Supervisory Writ, 9. This court is fully confident that the District Court will give very careful consideration to this court's opinion in *Hawkins Field* as the record of the matter before the District Court is further developed and the matters to which counsel are now privy are brought into the light of the open record. This court is equally confident that the District Court will take appropriate action should it subsequently become clear that *Hawkins Field* is dispositive of any of the claims below. Moreover, should it be revealed that one or more of the parties below are disingenuous in pursuit of the positions they urge, this court is confident that the District Court will sanction such frivolousness. Finally, upon a full and complete record the unsuccessful litigants below will have ample opportunity to present any claim of error on appeal.

Accordingly, for the reasons stated, the United States Department of Energy's Petition for a Supervisory Writ is DENIED.