## EXXON CORPORATION

v.

## JARVIS CHRISTIAN COLLEGE, et al.

### Civ. A. No. TY–80–432–CA.

United States District Court,
E.D. Texas,
Tyler Division.

Aug. 25, 1989.

On Motion to Dismiss and for Summary Judgement Nov. 7, 1989.

David J. Beck and A. Frank Koury, Fulbright & Jaworski, Reagan Burch, Jr., Baker & Botts, W.J. McAnelly, Jr., Edward de la Garza, Exxon Corp., Houston, Tex., for plaintiff.

## ORDER

ROBERT M. PARKER, Chief Judge.

Exxon Corporation ("Exxon") is the Operator of a unitized field known as the Hawkins Field Unit ("HFU"), located near Tyler, Texas. As the result of a lawsuit filed by the Department of Energy ("DOE"), Exxon was found liable for $895,501,163.85 in overcharges from the sales of HFU crude oil as well as for the interest on that amount. *United States v. Exxon Corp.*, 561 F.Supp. 816 (D.D.C.1983). The decision was affirmed by the Temporary Emergency Court of Appeals ("TECA") in *United States v. Exxon Corp.*, 773 F.2d 1240 (TECA 1985), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986).

The district court found that Exxon had violated the two-tier oil price regulations set out in 10 C.F.R. §§ 212.73, 212.74 (1975) by selling HFU crude oil in excess of the congressionally mandated ceiling from 1975 to 1981. 561 F.Supp. at 816. The DOE contended in *United States v. Exxon* that Exxon had overcharged crude oil purchasers by selling from the HFU as "new" oil what should have been sold as lower priced "old" oil. 561 F.Supp. at 818. Exxon alleges in its pleadings that pursuant to the district court's judgment Exxon, in its capacity as Unit Operator, paid $2,095,772,-859.04 to the United States Treasury for overcharges and interest in the sale of HFU crude oil during the period from January 1, 1975, through January 28, 1981.

Exxon now claims in this Court that it should be reimbursed for the amounts paid by Exxon pursuant to the judgment in *United States v. Exxon Corp.* and attributable to the share of unit production received by other HFU interest owners during the period from January 1, 1975 through January 28, 1981. Exxon's pleadings assert a right of reimbursement from HFU working and royalty interest owners in five counts. In Count I, Exxon alleges that it has a right of contribution under either federal common law or federal statutes. The other four counts are based upon state common law theories of recovery: breach of contract (Count II), agency (Count III), unjust enrichment (Count IV), and contribution or indemnity (Count V).

Previously, this Court expressed a desire to consider the issue of whether Exxon has a federal cause of action for reimbursement under Count I of its pleadings. A number of parties have presented motions and briefs on the issue.

Exxon alleges that it has a cause of action for reimbursement under Section 209 of the Economic Stabilization Act of 1970 ("ESA"), 12 U.S.C. § 1904, note as well as under Section 5(a)(1) of the Emergency Petroleum Allocation Act of 1973 ("EPAA"), 15 U.S.C. § 754(a)(1). Section 209 of the ESA provides the following:

§ 209 Injunctions and other relief

Whenever it appears to any person authorized by the President to exercise authority under this title that any individual or organization has engaged, is engaged, or is about to engage in any acts or practices constituting a violation of any order or regulation under this title, such person may request the Attorney General to bring an action in the appropriate district court of the United States to enjoin such acts or practices, and upon a proper showing a temporary restraining order or a preliminary or permanent injunction shall be granted without bond. Any such court may also issue mandatory injunctions commanding any person to comply with any such order or regulation. In addition to such injunctive relief, the court may also order restitution of moneys received in violation of any such order or regulation.

By its express language, Section 209 of the ESA does not provide Exxon with a federal cause of action for reimbursement. It provides the United States Attorney General with standing to sue to enforce ESA provisions. Section 5(a)(1) of the EPAA merely incorporates Sections 205–207 and 209–211 of the ESA. *See* 15 U.S.C. § 754(a)(1). Therefore, Section 5(a)(1) of the EPAA also does not expressly provide Exxon with a federal cause of action for reimbursement.

Exxon contends that a cause of action for reimbursement is implied under the ESA and the EPAA. In determining whether a statute provides an implied cause of action, the focus is on the intent of Congress; this intent may be discerned by looking at the legislative history of the statute as well as at other factors such as the "identity of the class for whose benefit the statute was enacted, the overall legislative scheme, and the traditional role of the states in providing relief." *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981); *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

In the case at bar, there is no evidence of congressional intent to provide a private cause of action for reimbursement under the ESA or the EPAA. First, nothing in the legislative history of the ESA or the EPAA provides authority for such a cause of action. Second, it is clear that Section 209 of the ESA was not enacted for the benefit of those who violate its provisions. In fact, Section 209 was enacted to enforce the ESA's provisions against those such as Exxon.

Third, the overall scheme of the ESA and the EPAA is comprehensive in nature. Section 209 of the ESA provides a cause of action for the United States Attorney General. Section 210 provides a cause of action for private persons. "The comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies." *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 93–94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981). Fourth, "[t]here is nothing in the [EPAA] or its regulations that suggests an intention to place ordinary contractual relations or disputes under the jurisdiction of the federal courts." *Swann Oil, Inc. v. Keystone Portland Cement Co.,* 385 F.Supp. 1299, 1303 (E.D.Pa.1974). From the foregoing, this Court finds that there is no implied cause of action for reimbursement under Section 209 of the ESA or under Section 5(a)(1) of the EPAA.

■ Exxon alleges that it has an implied cause of action as a matter of federal common law. The United States Supreme Court has recognized "the need and authority in some limited areas to formulate what has come to be known as 'federal common law.'" *Texas Industries, Inc.,* 451 U.S. at 640, 101 S.Ct. at 2067. "These instances are few and restricted . . ." *Id.* There are two situations where federal courts have been given authority to fashion federal common law: where a federal rule of decision is necessary to protect "uniquely federal interests" and where Congress has given the courts the power to develop substantive law. *Texas Industries, Inc.,* 451 U.S. at 640–42, 101 S.Ct. at 2066–68 (failing to find a uniquely federal interest under the antitrust laws for an implied cause of action for contribution).

Reimbursement in the case at bar implicates a uniquely federal interest. In *United States v. Exxon Corp.,* Exxon was

found liable for violating the two-tier pricing regulations under the ESA and the EPAA. The two-tier pricing structure was "designed to further the twin goals of combatting inflation while encouraging new domestic oil production." 561 F.Supp. at 818; *Cities Services Co. v. FEA,* 529 F.2d 1016, 1020 (TECA 1975). *See also* H.R.Rep. No. 628, 93d Cong. 1st Sess. 26 (1973), U.S.Code Cong. & Admin.News, 2582, 2703; *Pennzoil Co. v. DOE,* 680 F.2d 156, 161 (TECA 1982).

In analyzing the regulatory history of the ESA and the EPAA, the TECA stated that it was "sufficient to state that the purpose of petroleum price regulation was to ensure fair allocation of petroleum resources at equitable prices and to encourage the search for new energy resources." *United States v. Exxon,* 773 F.2d at 1247–48. Lastly, the EPAA was passed by Congress when the Arab oil embargo caused oil prices to rise sharply in November of 1973. *Pennzoil Co. v. DOE,* 680 F.2d at 160–61. On January 28, 1981, the President terminated petroleum price controls. *Id.* at 161, f.n. 6.

Exxon alleges that it paid a portion of the judgment in *United States v. Exxon Corp.* attributable to overcharges received by other HFU interest owners. Assuming for the purpose of this analysis that Exxon's allegation is true, it would follow that by retaining these overcharges these interest owners are undermining the twin goals of reducing inflation and increasing domestic production of crude oil.

The DOE did not sue these interest owners merely because it was too much of an administrative burden. 561 F.Supp. at 850. Instead, this burden was shifted to Exxon:

> ... Exxon ... is not without recourse against the other interest owners, and so imposing full responsibility on Exxon will aid in enforcement of price controls without unfairness to Exxon.

561 F.Supp. at 850. To disallow Exxon to maintain an action for reimbursement from these interest owners would thwart the purposes of the petroleum price regulations. Moreover, a uniform rule of decision is necessary to effectuate these purposes. The task of ensuring the reduction of oil prices in this nation and of guaranteeing an increase in the domestic production of crude oil cannot be left to the vagaries of state law.

This is a court of equity. In addition to the existence of a uniquely federal interest, a sense of justice and fairness demands that Exxon be allowed to maintain a cause of action for reimbursement. It is clear that the district court in *United States v. Exxon Corp.* could have utilized Section 209 to require restitution from the other HFU interest owners had they been a party to that suit. This Court sees no reason why the result should be any different in the present lawsuit where the burden of obtaining restitution from these interest owners has been shifted to Exxon. This Court finds that Exxon has an implied cause of action under federal common law for reimbursement.

Furthermore, the Court is persuaded that Exxon may be barred by the doctrine of collateral estoppel from asserting its cause of action for reimbursement against the royalty interest owners in this action. As the Unit Operator who chose the pricing method at the HFU field, Exxon owed the royalty interest owners "a quasi-fiduciary duty." In other circumstances, Texas courts have recognized

1.) a duty of utmost good faith. *E.g. Kimsey v. Fore,* 593 S.W.2d 107 (Tex.Civ. App.—Beaumont 1979, *writ ref'd n.r.e.*),

2.) a fiduciary duty. *E.g. Manges v. Guerra,* 673 S.W.2d 180 (Tex.1984), and

3.) a duty of good faith and fair dealing. *E.g. Arnold v. National County Mutual Fire Insurance Co.,* 725 S.W.2d 165 (Tex.1987).

At the very least, Exxon owed a duty to the royalty interest owners to act as a reasonably prudent operator.

The factual findings by the district court in *United States v. Exxon Corp.* show that Exxon did not act with reasonable prudence. In addition, the findings show that Exxon's decision to use an illegal pricing structure for the HFU was made without consultation with the royalty interest owners:

> After Ruling 1975–15 was issued, Exxon simply informed royalty interest owners that 'Exxon had elected to compute ex-

empt oil as it did before the ruling was issued.' PX 145 (Letter from Exxon to Hawkins Field interest owners, October 20, 1975).

561 F.Supp. at 850, f.n. 51.

It does not appear at this time that Exxon has alleged any facts showing that the royalty interest owners were parties to either the operating agreement or to discussions concerning the method of pricing HFU oil. If called upon to rule today, the Court would be inclined to dismiss Exxon's claim against the royalty interest owners. However, the Court is also aware that Exxon has not fully addressed the above issues. Therefore, it is ORDERED that Exxon shall have thirty (30) days from receipt of this Order to address the collateral estoppel and duty issues involving the royalty interest owners.

## ON MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

In its August 25, 1989, Order, this Court ordered Exxon Corporation ("Exxon") to address issues raised by numerous royalty interest owners of the Hawkins Field Unit ("HFU") in their various motions to dismiss and motions for summary judgment. The crux of the motions to dismiss involved Exxon's failure to state a federal statutory or common law claim. The Court settled this issue in the August 25, 1989, Order, determining that Exxon does have a cause of action for reimbursement under federal common law.

The primary issue remaining with respect to the HFU royalty interest owners focuses upon the duty, if any, owed by Exxon, as operator of the HFU, to the royalty interest owners. The Court remains persuaded that Exxon at least owed the royalty interest owners the duty to act as a reasonably prudent operator and perhaps owed an even higher fiduciary or "quasi-fiduciary" duty. After consideration of the above-mentioned motions and Exxon's brief in response to the Court's August 25, 1989, Order, the Court is of the opinion that genuine issues of material fact exist as to whether Exxon breached any duties owed the HFU royalty interest owners. The Court is further persuaded that Exxon's entire cause of action for reimbursement against the royalty interest owners is not barred by the doctrine of collateral estoppel, although the factual findings regarding the reasonableness of Exxon's actions made by the district court in *United States v. Exxon Corp.*, 561 F.Supp. 816 (D.D.C.1983), will certainly preclude relitigation of the reasonableness of the same actions in the present suit.

It is, therefore, ORDERED that the motions to dismiss and motions for summary judgment of the HFU royalty interest owners are DENIED.