**In re PHILLIPS PETROLEUM COMPANY, et al.,
Petitioners.**

**No. 5-132.**

Temporary Emergency Court of Appeals.

Submitted on the Briefs.

Decided July 26, 1991.

T.L. Cubbage II, and George W. Bramblett, Jr., of Haynes and Boone, Dallas, Tex., for petitioner Phillips Petroleum Co. and Jarvis, petitioners.

Monroe N. Clayton, Jefferson, Tex., for Lula Mae Beavers, et al.

T. John Ward of Brown Maroney & Oaks Hartline, Houston, Tex., for Bracken petitioners.

Tim Gavin of Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for Michael L. Carter as Independent Executor of the Will and Estate of B.F. Phillips, Jr., Deceased, and as Trustee of all Trusts Created under the Will of B.F. Phillips, Jr.

William M. Huffman of Huffman & Palmer, Inc., Marshall, Tex., for Manziel petitioners.

R. Matt Dawson of Dawson & Sodd, Corsicana, Tex., for petitioners Elaine Markham Clanton, Eva Jean Blount, and Princess Louise Dawson.

Robert M. Martin, Jr., of Storey, Armstrong, Steger & Martin, P.C., Dallas, Tex., for petitioner Elloine Moseley Sinclair.

Barry F. Cannaday of Jenkens & Gilchrist, Dallas, Tex., for petitioners Martha Ann Moody, Martha Ellen Rosenblum (nee Moody), Joe K. Moody, R.E. Krochman, Jr., Flora K. Krochman, Flora Bell Krochman.

Martha Ann Moody, Trustee for Trust No. 2.

Martha K. Moody, Trustee for Martha Ellen Moody Trust.

Ann K. Young, for petitioners.

David J. Beck, Charles E. Sullivan, Jr., A. Frank Koury, and Amy Murdock Decker of Fulbright & Jaworski, Houston, Tex., John M. Simpson and Robert A. Burgoyne of Fulbright & Jaworski, Washington, D.C., Reagan Burch, Jr., and Steve Stricklin of Baker & Botts, Houston, Tex., Roger W. Anderson of Conner, Gillen, Yarbrough & Anderson, P.C., Tyler, Tex., and W.J. McAnelly, Jr. and Edward de la Garza, Houston, Tex., for respondent Exxon Corp.

Before GARZA, Chief Judge, and CHRISTENSEN and BROWN, JJ.

PER CURIAM.

Now before us is a petition for a supervisory writ of mandamus directed to Honorable Robert M. Parker, Chief Judge of the United States District Court for the Eastern District of Texas, Tyler Division, filed

by Phillips Petroleum Company and others (hereinafter referred to collectively as "petitioners" or "Phillips"). Oryx Energy Company filed with us a similar petition which on July 8, 1991, was withdrawn because it had entered into an agreement settling the issues involving it. The Oryx petition is therefore moot. Both of these petitions concerned a recurrence of litigation involving an unitized field known as the "Hawkins Field Unit" ("HFU") located near Tyler, Texas, various aspects of which already have become familiar to this Court.[1]

Not having directed answers to the petition by the putative respondent Exxon Corporation ("Exxon"), and being of the opinion that the requested writ should be refused, we deny the petition now before us. *See* Fed.R.App.P. 21 in light of Rule 1 of the General Rules of this Court.

## I. BACKGROUND

Exxon is the principal interest owner and operator of the HFU. In *United States v. Exxon Corporation*, 561 F.Supp. 816 (D.D.C.1983), it was found liable for overcharges in the sale of HFU crude oil and interest, and it ultimately paid restitution of $2,095,772,859.04 to the United States Treasury. The district court's judgment was affirmed by this Court in *United States v. Exxon Corp., supra*, 773 F.2d 1240 (Em.App.1985), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986) ("*Exxon I*").

Exxon brought suit in the United States District Court for the Eastern District of Texas, Tyler Division, against working and royalty interest owners of the HFU, seeking reimbursement for their claimed share of the restitution for which it had been held liable. The complaint contained five counts. In Count I, Exxon alleged that it had a right of contribution under either federal common law or federal statutes; the other four counts were based upon state common law theories, including breach of contract, agency, unjust enrichment and contribution or indemnity. A number of similar suits were brought against, or by, interest owners, which were ordered consolidated and the parties realigned under the title *Exxon Corporation v. Jarvis Christian College, et al.*, No. TY-80-432-CA.

Judge Parker deferred consideration of the other claims of Exxon and ruled that Exxon had a cause of action under "federal common law" for reimbursement from the working and royalty interest owners. *Exxon Corp. v. Jarvis Christian College*, 746 F.Supp. 652 (E.D.Tex.1989). He reasoned that the two-tier pricing structure established by petroleum price regulations was designed to further the twin goals of combating inflation while encouraging new domestic oil production to insure fair allocation of petroleum resources at equitable prices and to encourage the search for new energy resources.[2]

Recognizing that such a cause of action existed, the court at first expressed doubt about Exxon's ability to establish it as against possible affirmative defenses but following the entry of this order, and published in connection with it, Judge Parker

---

**1.** *See U.S. Dept. of Energy v. Roth*, 882 F.2d 519 (Em.App.1989); *United States v. Exxon Corp.*, 773 F.2d 1240 (Em.App.1985), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986); *Exxon Corp. v. United States*, 655 F.2d 1112 (Em.App.1981). Related issues are now before another panel of this Court In Re: Department of Energy Stripper Well Exemption Litigation, No. 10-88, in which the petitioners have tendered an amici curiae brief.

**2.** Exxon alleges that it paid a portion of the judgment in *United States v. Exxon Corp.* attributable to overcharges received by other HFU interest owners. Assuming for the purpose of this analysis that Exxon's allegation is true, it

would follow that by retaining these overcharges these interest owners are undermining the twin goals of reducing inflation and increasing domestic production of crude oil.

. . . .

... To disallow Exxon to maintain an action for reimbursement from these interest owners would thwart the purposes of the petroleum price regulations. Moreover, a uniform rule of decision is necessary to effectuate these purposes. The task of ensuring the reduction of oil prices in this nation and of guaranteeing an increase in the domestic production of crude oil cannot be left to the vagaries of state law.

746 F.Supp. at 655.

denied defendants' motion to dismiss and for summary judgment.[3]

In response to an oral motion, the court ordered that the trial of damages should precede the trial of the liability issue, explaining that this would be "the eminently fair and efficient manner in which to proceed with this trial due to the vast economic disparity of the parties," and "should work no prejudice to plaintiff Exxon Corporation and should reduce the potential of producing unjust results for the defendants." Order Nov. 7, 1980, I Appendix Tab C6.

More than a year later, after a variety of additional motions for summary judgment had been filed and briefed, the court made the order which is the primary target of this petition for mandamus. Order of February 15, 1991, I Appendix Tab A8, pp. 1–8. Judge Parker reiterated his holding of August 25, 1989, that Exxon had an implied cause of action for reimbursement against defendants as a matter of federal common law, and after considering the motions and responses thereafter filed in compliance with the establishment of a deadline for filing, was of the opinion that summary judgment was appropriate in this case. The court rejected the royalty interest owners' primary assertion that Exxon was not entitled to damages because it had not suffered a "loss" and the theory that it should not recover because it was a "wrongdoer." Limiting the claims against the royalty interest owners for pre-suit interest, the court rejected their equitable defenses by which they sought to preclude or limit Exxon's damages,[4] and ruled that the measure of damages would be "the difference between the amount of royalties actually received and the amount that would have been received had the HFU oil been properly classified."

In view of different "weights" of equity applicable to the working interest owners, the court declined to limit their liability for the interest component of damages and held that they would be liable for their proportionate share of full reimbursement "upon a jury finding that Exxon acted as a reasonably prudent operator," stating:

> It is, therefore, ORDERED that Exxon is granted summary judgment against the Defendant royalty interest owners for the measure of damages discussed above. It is further ORDERED that Exxon is granted summary judgment against the working interest owners as discussed above, except on the question of whether or not Exxon acted as a reasonably prudent operator. That remaining issue will be determined by a jury.

Order of February 15, 1991, I Appendix Tab A8, pp. 6–7.

Noting that calculation of the damages owing Exxon by the royalty and working interest owners was complex and might include extensive computations in the individual cases of the several hundred remaining defendants, the court appointed a Special Master pursuant to Fed.R.Civ.P. 53, cost to be borne equally by the plaintiff

---

**3.** The primary issue remaining with respect to the HFU royalty interest owners focuses upon the duty, if any, owed by Exxon, as operator of the HFU, to the royalty interest owners. The Court remains persuaded that Exxon at least owed the royalty interest owners the duty to act as a reasonably prudent operator and perhaps owed an even higher fiduciary or "quasi-fiduciary" duty. After consideration of the above-mentioned motions and Exxon's brief in response to the Court's August 25, 1989, Order, the Court is of the opinion that genuine issues of material fact exist as to whether Exxon breached any duties owed the HFU royalty interest owners. The Court is further persuaded that Exxon's entire cause of action for reimbursement against the royalty interest owners is not barred by the doctrine of collateral estoppel, although the factual findings regarding the rea-

sonableness of Exxon's actions made by the district court in *United States v. Exxon Corp.,* 561 F.Supp. 816 (D.D.C.1983), will certainly preclude relitigation of the reasonableness of the same actions in the present suit.

746 F.Supp. at 656.

**4.** The royalty interest owners raise numerous equitable defenses and offsets in the motions for summary judgment and responses thereto, including offsets for income taxes and windfall profits taxes paid by the HFU royalty interest owners and for payments received by Exxon under the DOE's mandatory Entitlements Program. The Court has examined each of these arguments and has determined them to be without merit.

I Appendix Tab A8, p. 4.

and the defendants and taxed. I Appendix Tab A8, pp. 7–8. The Special Master is now engaged in investigations and hearings in an attempt to categorize the various circumstances of the defendants, conduct discovery, and establish an evidential basis for his report to the trial court. See Transcript of Hearings, III Appendix Tabs E1, E2. During the course of the proceedings there already have been numerous defendants dismissed by order of the court for "hardship" or other reasons. See docket entries, I Appendix Tab D1.

## II.  STATEMENT OF THE CASE

The petitioners now ask this Court to intervene in the district court's proceedings on the claim that serious errors have been or are being made which warrant correction through a writ of mandamus.

The petition in brief contends that the district court violated the notice requirement of Rule 56 and petitioners' constitutional rights in entering summary judgment on the liability issue without due notice, hearing or opportunity for discovery; erroneously refused to recognize any defenses; created a right of action where none is supportable as a matter of federal common law; refused to recognize the doctrine of collateral estoppel even though the judgment in *Exxon I* is the basis for its claims, and its appointment of a Special Master to determine damages constituted a clear abuse of discretion. Petitioners pray that the district court's order of February 15, 1991, as well as its prior orders of August 25 and November 7, 1989, be vacated or, alternatively, that the district court's order denying certification be vacated and it be requested to certify its interlocutory order for appeal.

The petitioners also have filed with this Court motions to consolidate their petition with that of Oryx Energy Company, to stay proceedings in the district court pending our decision, and to "secure this Court's determination of the scope of its jurisdiction." Apparently perceiving some uncertainty as to which court is vested with jurisdiction over its petition for mandamus, or whether both courts are, petitioners

filed a similar petition with the United States Court of Appeals for the Fifth Circuit. That court summarily "denied" its petition in *In re Phillips Petroleum Company* (5th Cir. No. 91–4359, May 15, 1991) (unpublished), as it did a similar petition filed by Oryx Energy Company in *In re Oryx Energy Co.* (5th Cir. No. 91–4374, May 15, 1991) (unpublished).

## III.  JURISDICTION

Our jurisdiction extends to the adjudication of appeals in cases and controversies arising under the Emergency Petroleum Allocation Act of 1973 ("EPAA") or regulations or orders issued thereunder. See § 5(a)(1) of the EPAA, 15 U.S.C. § 754(a)(1), incorporating § 211(b)(2) of the Economic Stabilization Act, 12 U.S.C. § 1904 note.

Notwithstanding the Fifth Circuit's "denial" rather than "dismissal" of the petitions for mandamus filed with it, we find no indication of its views with respect to the jurisdiction of this Court or any principle of comity precluding recognition of our own jurisdiction and our determination of the merits of the petition for mandamus within the scope of that jurisdiction. *See Key v. Wise*, 629 F.2d 1049, 1054–55 (5th Cir.1980), *cert. denied*, 454 U.S. 1103, 102 S.Ct. 682, 70 L.Ed.2d 647 (1981); *United States v. Dean*, 752 F.2d 535, 541–42 (11th Cir.1985), *cert. denied*, 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986). *Cf. Citronelle–Mobile Gathering, Inc. v. Gulf Oil Corporation*, 591 F.2d 711 (Em.App.), *cert. denied*, 444 U.S. 879, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979).

We think it clear that to the extent properly invoked the Temporary Emergency Court of Appeals under the circumstances of the case below would have exclusive jurisdiction of issues finally determined by the district court of whether Exxon had a federal common law right of reimbursement implied from the ESA/EPAA and of defenses in light of any such implied right, together with inextricably commingled threshold or procedural issues. *See Pennzoil Exploration and Production Co. v. Lujan*, 928 F.2d 1139, 1141–42 (Em.App.

1991), and our prior decisions cited and collated at 1141–42. The power to issue an appropriate writ under 28 U.S.C. § 1651 is not limited to cases where appellate jurisdiction has already attached. *McClellan v. Carland*, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762 (1910); *Roche v. Evaporated Milk Ass'n.*, 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); 9 Moore's Federal Practice ¶ 110.28. It is obvious from the claims and contentions of the petitioners concerning the trial court's interlocutory rulings that they similarly arise from the EPAA. The very premise of an implied federal common law right of action as found by Judge Parker and the preclusion of defenses he deemed inconsistent therewith derived expressly from EPAA regulations and the devices and policies they entailed.

Exxon has addressed the question of this Court's jurisdiction both in its opposition to petitioners' motion that we determine such jurisdiction for future guidance and in its motion to be permitted to file with us various documents relating to petitioners' petition to the United States Court of Appeals for the Fifth Circuit asking for the relief sought here, which filing we allow. But apart from its chiding of petitioners for having asserted that jurisdiction existed in both courts, Exxon has not questioner the jurisdiction of this Court as petitioners now assert. In any event, it is clear beyond question that we do have jurisdiction to adjudicate the petition before us. Beyond this we mean to express no view concerning jurisdiction of any future appeal from the final judgment of the district court, which will depend upon the issues resolved by any judgment appealed and the grounds of the appeal.

## IV. THE MERITS

Turning to the merits of the petition, we are of the opinion that it does not warrant the issuance of the requested writ. The trial court validly denied motions for certifications of an interlocutory appeal. To grant the petition would improperly utilize it as a substitute in the absence of any justifying circumstances. "[E]fforts to persuade a court of appeals to issue mandamus to compel certification by the district judge have uniformly proved unsuccessful." 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3929 at 138–39 (1977). Such efforts should be and are similarly of no avail now.

Justification for the writ requires showing of a clear abuse of discretion or usurpation of the judicial power and petitioners bear the burden of establishing that their right to its issuance is clear and indisputable. *Mallard v. United States District Court*, 490 U.S. 296, 309, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989). The mandamus remedy is limited in nature and should not be used to undermine the final judgment principle. *Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967). It is an extraordinary remedy and as such must be reserved for extraordinary or exceptional situations. *Kerr v. United States*, 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976). To similar effect *see U.S. Dept. of Energy v. Roth, supra*, 882 F.2d 519, 521 (Em.App. 1989).

We intend to express no opinion concerning the issues of ultimate liability at this time. It is enough to say that neither the central interlocutory rulings of the trial court nor its peripheral determinations present extraordinary or usurpative situations justifying the issuance of the writ.

Nor do we find justification in petitioners' additional contentions that they were unfairly, unlawfully or in abuse of discretion deprived of opportunity for discovery or the notice required by Fed.R.Civ.P. 56, when the district court granted summary judgment "both as to liability and damage" after saying that the issue of damages would be tried first and liability reserved for future determination.

The district court's determination of "liability" to the extent made was argued and submitted by the parties as included in aspects of the damage question. Prior to the time the court issued its summary judgment ruling but following the order of bifurcation, both Exxon and the defendants

jointly (the court having appointed counsel for all defendants who were then unrepresented) filed motions for summary judgment, and various individual defendants separately moved or adopted the joint motions. In these motions and answers, cross-motions and replies, virtually every contention now urged as relating peculiarly to liability rather than damages was discussed and submitted for decision. The trial court did leave for determination by the jury the sole issue of liability which in its view remained—whether Exxon had conducted itself as a reasonably prudent operator.

The copies of docket sheets contained in the Appendix list some 900 separate entries over a period of ten years. Numerous of these related to the issues decided on summary judgment by the trial judge. Small wonder that he expressed doubt that further submissions would have contributed substantially to the body of information available to him.[5]

Again, we express no opinion concerning the ultimate validity of the court's grant of summary judgment, but reject the argument that any possible deficiencies in procedure or substance warrant issuance of the writ.

We have examined all of the other contentions set out in the petition as grounds for issuance of the writ and find them similarly without merit for such purpose.

## V. CONCLUSION

We conclude that the Phillips' petition for a writ of mandamus should be denied. It follows that the motions for consolidation and stay also should be denied as moot.[6] IT IS SO ORDERED.

---

**5.** After careful consideration of the motions filed by both sides and the responses thereto, along with the pleading on file and the opinions in *Exxon I*, the Court is of the opinion that summary judgment may be rendered on both the liability and damage issues at this time. This litigation has spanned a period of more than ten years, during which time a plethora of voluminous pleadings and briefs have been filed. It is inconceivable that further briefing could contribute substantially to the body of information available to the Court.

I Appendix Tab A8, pp. 2–3.

**6.** Of course a motion filed on July 9, 1991, by Exxon to dismiss Phillips' petition also is moot in light of this opinion.