In re DEPARTMENT of ENERGY
STRIPPER WELL EXEMPTION
LITIGATION.

KOCH INDUSTRIES, INC., Third
Party Defendant–Appellant,

v.

MOBIL OIL CORPORATION, Third
Party Plaintiff–Appellee.

No. 10–88.

Temporary Emergency Court of Appeals.

Argued Sept. 12, 1991.

Decided April 7, 1992.

Nancy Sue Allen and Kelly D. Sears, Koch Industries, Inc., Wichita, Kan., were on the brief, for third party defendant-appellant Koch Industries.

David A. Holzworth and Leslie K. Dellon, Lepon, McCarthy, Jutkowitz & Holzworth, Washington, D.C., and Arthur G. Hoffman, Mobil Exploration and Producing U.S., Inc., were on the brief, for third party plaintiff-appellee Mobil Oil Corp.

Before GRANT, METZNER and PECK, Judges.

GRANT, Judge.

Koch Industries, Inc. [Koch] is appealing an order granting summary judgment in favor of Mobil Oil Corporation [Mobil] on its third-party complaint against Koch. The central issue of the appeal is whether Koch can be held liable to Mobil under the federal common law for restitution or reimbursement.

It is undisputed that Mobil, an operator of crude oil properties with injection wells in Oklahoma and other states, certified its properties as stripper wells. Before the courts finally determined that such classification violated petroleum price regulations, Mobil paid into a court-established escrow fund the stripper price overcharges, but did not include severance tax amount paid to the states. Koch, as the first purchaser of stripper oil from Mobil, paid the severance taxes to Oklahoma, and excluded the tax amounts from the stripper price payments it made to Mobil on the twentieth day of each month following the production month. When it received a severance tax refund from Oklahoma on November 22, 1983, Koch kept it rather than remitting it to the escrow.

On September 29, 1988, the Department of Energy [DOE] filed a counterclaim against Mobil under Section 209 of the Economic Stabilization Act of 1970 [ESA],[1] seeking full restitution for the overcharged amounts, including the severance taxes and certain late deposits into the escrow. The DOE's position was that Mobil's escrow payments should have been based on its gross selling price to Koch, not on the net amount it received after Koch deducted severance taxes and remitted them to Oklahoma. Mobil then filed a third-party complaint against Koch, seeking relief for those deficiencies attributable to (1) the severance taxes paid by and later refunded to Koch, and (2) Koch's delayed payments.[2] It claimed entitlement based on contribution, restitution, and the Final Settlement Agreement [FSA] that settled the multidistrict litigation [M.D.L. 378] between DOE and parties such as Mobil.

The district court first granted the DOE's motion for summary judgment and ordered Mobil to pay in excess of $10 million into the court's escrow account as restitution for stripper well overcharges. That amount included the principal plus interest (at the DOE policy rates) of the

---

1. The Economic Stabilization Act of 1970 is set out as a note under 12 U.S.C. § 1904, and is incorporated into the Emergency Petroleum Allocation Act [EPAA] at 15 U.S.C. § 754(a)(1).

2. Mobil alleged that $470,295 in interest had "accrued on Koch's delayed payments to Mobil."

Because Koch failed to challenge that fact properly, the district court found that the fact of Koch's untimely payments, as well as the amount of interest accrued, were uncontroverted. 743 F.Supp. at 1472.

severance taxes and of the late payments Koch made to Mobil. *In re: Department of Energy Stripper Well Exemption Litigation,* 722 F.Supp. 649 (D.Kan.1989). Mobil paid that judgment.

The court then granted summary judgment to Mobil on its third-party complaint and denied Koch's motion to dismiss. *In re: Department of Energy Stripper Well Exemption Litigation,* 743 F.Supp. 1467 (D.Kan.1990). Finding that Koch had been unjustly enriched, it held Koch liable to Mobil for the retention of the severance tax refund Koch received from Oklahoma and for certain delayed payments to Mobil that resulted in Mobil's liability for an escrow deficiency.[3] Liability was based on the federal common law cause of action for restitution or reimbursement. This appeal followed.

## I. JURISDICTION

■ This court reviews the appeals of all cases and controversies arising under the ESA, the Emergency Petroleum Allocation Act of 1973 [EPAA], and their amendments, regulations and orders. *In re Phillips Petroleum Co.,* 943 F.2d 63, 66 (Temp. Emer.Ct.App.1991); *Pennzoil Exploration and Production Co. v. Lujan,* 928 F.2d 1139, 1141 (Temp.Emer.Ct.App.1991).

Under section 211 of the [ESA], Congress vested federal district courts and the Temporary Emergency Court of Appeals with exclusive jurisdiction over "cases and controversies arising under this title or under regulations or orders issued thereunder." Section 209 permits the court to order "restitution of monies received in violation of any such order or regulation." 12 U.S.C. § 1904 note.

*In re: Department of Energy Well Exemption Litigation,* 864 F.2d 796, 799 (Temp.Emer.Ct.App.1988). We have ex-

pressly acknowledged our jurisdiction to consider whether these statutes allow a federal common law cause of action for reimbursement.

We think it clear that to the extent properly invoked the Temporary Emergency Court of Appeals ... would have exclusive jurisdiction of issues finally determined by the district court of whether [a party] had a federal common law right of reimbursement implied from the ESA/EPAA and of defenses in light of any such implied right, together with inextricably commingled threshold or procedural issues.

*Phillips Petroleum,* 943 F.2d at 66.

## II. STANDARD OF REVIEW

■ The district court decided this case on cross-motions for summary judgment. Our examination of the lower court decision is a *de novo* review of the record and controlling law. *Behm Family Corp. v. U.S. Department of Energy,* 903 F.2d 830, 833 (Temp.Emer.Ct.App.1990); *City of Long Beach v. Department of Energy,* 754 F.2d 379, 385 (Temp.Emer.Ct.App.1985). A district court's grant or denial of a motion to dismiss is also reviewed *de novo* on appeal. *Allen v. Westpoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991); *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991).

## III. ISSUES

The central question herein is whether, by way of a third-party action, operator Mobil can recover from first purchaser Koch the severance taxes and other funds that Mobil was required to pay into the escrow account as part of the overcharges. Koch admitted it received the refund and kept it. However, it asserted that Mobil had no right to bring a claim against Koch, for Koch had no duty to deposit the refund into escrow.[4] The court disagreed; be-

---

**3.** By its Orders of October 12, 1990 and December 11, 1990, the court clarified its holding by explaining that Koch was liable for the total severance tax refund (principal and interest paid by Oklahoma) plus interest at DOE policy rates from the date that Koch received the refund until judgment was paid.

**4.** The district court agreed that Koch could not be held liable under the court's injunction order, since Koch was not a plaintiff in M.D.L. 378. It also held that, although Koch is an "affiliate" of a party to M.D.L. 378, and thus bound by the Final Settlement Agreement, nevertheless "[n]othing in the FSA can be read

cause Koch was unjustly enriched, it was held liable under the federal common law of restitution or reimbursement.[5] 743 F.Supp. at 1476.

On appeal Koch insists that the court erred in formulating a new federal common law cause of action as the basis for its liability to Mobil. It further asserts that it was improperly joined in the DOE's action against Mobil under Rule 14(b) of the Federal Rules of Civil Procedure because the underlying right to relief was wrongly based upon federal common law.

Mobil responds that Koch has conceded that it was properly impleaded as a party under Rule 14 as long as Mobil has a cause of action against Koch; and the court rightly found a cause of action for restitution or reimbursement. Mobil contends that federal common law applies to this case because there is a "uniquely federal interest" in price controls; because substantial rights and duties hinge upon the outcome of this litigation between private parties; and because the operator liability doctrine, under which Mobil was held liable, allows recovery from those who actually caused the overcharge. According to Mobil, district courts have been given the broad equitable power to "set things right"; this court has done so by allowing restitution and reimbursement.

The district court did find that Mobil had stated a claim against Koch upon which relief could be granted, and based that claim on the federal common law for restitution or reimbursement. Once it determined that Koch was liable to Mobil for part of the DOE's counterclaim against Mobil, the court did not address Koch's argument that it was improperly joined as a third-party defendant. 743 F.Supp. at 1476. We will consider first the procedural propriety of the third-party joinder under

Rule 14(b), and then the question of whether Mobil properly stated a claim against Koch.

## A. Joinder

### (1) Procedure for Impleading New Party

Rule 14 is a procedural mechanism for judicial efficiency, used to avoid delay and needless multiplicity of actions. *See Kim v. Fujikawa,* 871 F.2d 1427, 1434 (9th Cir. 1988); *Baltimore & O.R. Co. v. Saunders,* 159 F.2d 481, 484 (4th Cir.1947). The impleader "expedite[s] the resolution of secondary actions arising out of or in consequence of the action originally instituted." *Colton v. Swain,* 527 F.2d 296, 299 (7th Cir.1975). After a counterclaim has been filed, Fed.R.Civ.P. 14(b) presents the method for impleading a new party. It provides:

> When a counterclaim is asserted against a plaintiff, the plaintiff may cause a third party to be brought in under circumstances which under this rule would entitle a defendant to do so.

Rule 14(a) establishes when a defendant may bring in a third party:

> At any time after commencement of the action a defending party, as third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. . . .

■ A trial court's determination whether a third-party defendant may be impleaded under Rule 14 is within its sound discretion. We will overturn that decision only if the court has abused that discretion. *Stewart v. American International Oil & Gas,* 845 F.2d 196, 199 (9th Cir.1988); *Kenneth*

---

to impose liability to the escrow on Koch." 743 F.Supp. at 1474.

**5.** In this decision the district court referred to the common law action as "one for restitution, reimbursement, contribution, or indemnity." 743 F.Supp. at 1476. In a later opinion the court stated that the common law cause of action upon which it relied was that of reimbursement or restitution.

. . . [T]his court recognized a substantive right to reimbursement or restitution in favor of Mobil. While the court also referred to contribution and indemnity, the cause of action recognized in *Mobil v. Koch* and *Mobil v. Sun* is neither contribution nor indemnity.

*In re: Department of Energy Stripper Well Exemption Litigation,* 752 F.Supp. 1534, 1536 (D.Kan.1990) (citations omitted).

*Leventhal & Co. v. Joyner Wholesale Co.,* 736 F.2d 29, 31 (2d Cir.1984).

◼ Because there is diversity between the third-party litigants herein, the court's jurisdiction over this matter has an independent rather than ancillary basis.[6] The parties do not dispute that Mobil's claim against Koch arises out of the same set of facts as does the DOE's claim against Mobil. Nor does Koch challenge the propriety of Mobil's filing of its third-party complaint. We agree that the technical requirements of Rule 14(b) were satisfied: The DOE's counterclaims against Mobil sought recovery of any deficiencies from the court's escrow, and Mobil's third-party action claimed that Koch was liable to Mobil for certain of those deficiencies asserted in the counterclaim. Thus Mobil properly brought in Koch as "a person not a party to the action who is or may be liable to [it] for all or part of the [counterclaimant's] claim against [it]." *See National Surety Corp. v. Charles Carter & Co.,* 539 F.2d 450, 457 (5th Cir.1976).

Furthermore, Mobil's third-party claim was based on, and derivative of, the original counterclaim brought by the DOE: Mobil sought contribution or restitution for any liability it might incur to the DOE for specific monetary deficiencies, namely, severance taxes and delayed payments. Hence the complaint satisfies the Supreme Court's requirement that the third-party action be logically dependent upon the resolution of the preliminary lawsuit. *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 376, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978). *See also United States v. One 1977 Mercedes Benz,* 708 F.2d 444, 452 (9th Cir.1983), *cert. denied sub nom. Webb v. U.S.,* 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984).

Finding that Mobil's third-party complaint was technically proper, and that it was logically dependent upon and intertwined with the DOE's overcharge claims against Mobil, we hold that the district court did not abuse its discretion in permitting Mobil to implead Koch under Rule 14.

### (2) *Statute of Limitations*

◼ Koch's first objection to the third-party complaint is that Oklahoma's three-year statute of limitations, 12 O.S. § 95 (Second), bars Mobil's claim to the severance tax refund Koch received in 1983. Rejecting that argument, the district court found that "the cause of action did not accrue until final judgment had been entered against Mobil in favor of the DOE for the amounts at issue here." 743 F.Supp. at 1476.

◼ We uphold the district court's ruling. Because a claim against a third-party defendant is contingent upon the determination that the original defendant is liable, the general rule concerning third-party complaints is that "the statute [of limitations] usually will not commence to run against the defendant (third-party plaintiff) and in favor of the third-party defendant until judgment has been entered against the defendant, or the defendant has paid the judgment." *ITT Rayonier, Inc. v. Southeastern Maritime Co.,* 620 F.2d 512, 514 (5th Cir.1980) (quoting 3 Moore's Federal Practice ¶ 14.09 at 14–247 (2d ed. 1979)). *See also Sea–Land Service, Inc. v. United States,* 874 F.2d 169, 171 (3d Cir. 1989), *cert. denied,* — U.S. —, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991); *D'Onofrio Construction Co. v. Recon Co.,* 255 F.2d 904, 906–07 (1st Cir.1958).

Moreover, neither the ESA nor the EPAA provides for specific limitations periods. *See, e.g., Kellermyer v. Blue Flame Gas Corp.,* 797 F.2d 983, 984–85 (Temp.Emer.Ct.App.), *cert. denied,* 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986); *Citronelle–Mobile Gathering, Inc. v. Edwards,* 669 F.2d 717, 721 (Temp.Emer.Ct.App.), *cert. denied,* 459

---

**6.** As a preliminary matter, the district court found that the jurisdictional basis for this third-party claim was federal subject matter jurisdiction based on diversity of citizenship: Mobil is a New York corporation with its principal place of business in New York, and Koch is a Kansas corporation with its principal place of business in Kansas. Thus it recognized an independent federal basis for jurisdiction over this claim. The parties have not raised a jurisdictional challenge.

U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141 (1982). This court has repeatedly found that state statutes of limitations should not be applied in equitable proceedings (*see, e.g., Kellermyer, supra* (distinguishing between causes of action at law and in equity)), and more specifically that cases such as the underlying § 209 DOE suit, brought to enforce equitable restitution and to recover overcharges under federal law, are not subject to state statutes of limitations (*see Lea Explorations, Inc. v. Department of Energy*, 843 F.2d 510, 514 (Temp.Emer.Ct.App.1988); *United States v. Sutton*, 795 F.2d 1040, 1061 (Temp.Emer.Ct.App.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987)), even if the suit is brought by a private party (*see Edwards*, 669 F.2d at 721).

Since the underlying counterclaim could not be barred by any statute of limitations, and the third-party action was contingent upon the determination in that cause, we hold that Mobil's third-party complaint is not time barred.

### (3) *Procedural or Substantive Error*

Koch's second objection to the joinder brings us to the central issue in this case. Koch contends that, "[i]f the district court erred in formulating a federal common law right of action, which Koch submits that it did, then Koch's motion to dismiss for improper joinder under Rule 14 should have been granted." (Appellant's brief at 17–18).

■ It is true that a third-party complaint, like any complaint, may be flawed if it fails to state a cause of action upon which relief can be granted. However, the problems are separate ones: The propriety of the third-party complaint under Rule 14 is a procedural issue; and the validity of Mobil's claim in the complaint, based upon a federal common law cause of action, is a substantive issue. "[W]hile Rule 14 provides the procedural mechanism for the assertion of a claim for contribution or indemnity, there must *also* exist a substantive basis for the third-party defendant's liability." *Kim v. Fujikawa*, 871 F.2d at

1434 (emphasis added). Having found the joinder to be proper, we now turn to Mobil's basis for claiming a right to relief.

### B. *Validity of Mobil's Federal Common Law Claim*

### (1) District Court Decision

■ Recognizing a federal common law cause of action for contribution, restitution or reimbursement upon which relief could be granted, the district court granted the relief of summary judgment to Mobil and held Koch liable to Mobil for the reimbursement of certain overcharge amounts under the federal common law. *Stripper Well Litigation*, 743 F.Supp. at 1476. The court first found that "[t]his case implicates a uniquely federal interest, federal petroleum price controls, which requires the application of federal common law." 743 F.Supp. at 1474 (citing *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981)). It then looked at the counterclaim underlying this action. In that cause Mobil was required to pay certain overcharge amounts, including the severance taxes plus accrued interest at DOE policy rates, into the escrow under the operator liability doctrine, which places total liability for all overcharges on the operators of a crude oil producing property, even though the operator did not receive all the overcharges. *Id.* at 1474–75 (citing *Sauder v. Department of Energy*, 648 F.2d 1341, 1347–48 (Temp.Emer.Ct.App.1981)). Under that doctrine, sole liability is imposed on the operator primarily for the administrative convenience of the Department of Energy; the operator may then seek recourse from other interest owners. *Id.* at 1475.

Considering next whether an operator can seek recourse in federal court, the district court below found persuasive the reasoning of *Exxon Corp. v. Jarvis Christian College*, 746 F.Supp. 652 (E.D.Tex.1989), which recognized that an operator had an implied cause of action under federal common law for reimbursement against other interest owners that had received and retained the overcharges. The court then extended the use of this common law action

to the first purchaser Koch because Koch, like an interest owner, received a share of the overcharges to which it was not entitled. *Id.* at 1475–76. Finding that Koch was unjustly enriched by its retention of the tax refund, it concluded:

> To the extent Mobil has been ordered to pay sums into the escrow on account of Koch's actions, Mobil is entitled to recovery from Koch. Koch is liable to Mobil for the severance tax amounts plus interest at DOE policy rates.

*Id.* at 1476.

### (2) Positions of the Parties

Koch argues that Mobil cannot recover from it under a new federal cause of action for restitution or reimbursement. Such a common law action is created only for "uniquely federal interests," and the instances are "few and restricted," Koch insists, citing *Wheeldin v. Wheeler,* 373 U.S. 647, 651, 83 S.Ct. 1441, 1444, 10 L.Ed.2d 605 (1963). According to Koch, Mobil's claim against it does not involve anything "uniquely federal" as defined in *Wheeldin* and in *Texas Industries,* 451 U.S. at 642, 101 S.Ct. at 2068. Koch also contends that the comprehensive overall scheme of ESA deliberately omitted a federal common law remedy; thus the court erred in creating one.

Mobil responds that federal control of petroleum prices has required the application of federal common law. It then points to the operator liability doctrine, developed under the district court's equitable power "to set things right among the parties to the litigation." Mobil urges this court to follow the district court's logical extension of that doctrine: Koch, the first purchaser, is liable to Mobil, the operator, because the severance tax refund Koch received should

have been paid into the court's escrow, and Koch was unjustly enriched in that amount.

### (3) Analysis

On this issue we have the clear guidance of the Supreme Court. In *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), the Court concluded that a federal cause of action is created either "through the affirmative creation of a right of action by Congress, either expressly or by clear implication," or, absent legislation, "through the power of federal courts to fashion ... federal common law...." *Texas Industries,* 451 U.S. at 638, 101 S.Ct. at 2066, citing *Northwest Airlines,* 451 U.S. at 90–91, 101 S.Ct. at 1580. We begin, therefore, with a look at the broadly worded provision in the Economic Stabilization Act that permits the equitable remedy of restitution that Mobil seeks.

■ Section 209 of the ESA expressly gives federal courts the power to "order restitution of moneys received in violation of" its orders.[7] It also provides the government with the enforcement power it needs to collect those moneys, namely the overcharges. It does not encompass a private action for restitution. Nor do any of the other provisions of the ESA.

■ Nor can we find that a private right of action for restitution or reimbursement is implied in the statute. Again we have followed the course directed by the Supreme Court:

> In determining whether a federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, our task is one of statutory construction. The ultimate question in cases such as this is whether Congress intended to cre-

---

7. Section 209, in its entirety, provides:
 Whenever it appears to any person authorized by the President to exercise authority under this title that any individual or organization has engaged, is engaged, or is about to engage in any acts or practices constituting a violation of any order or regulation under this title, such person may request the Attorney General to bring an action in the appropriate district court of the United States to enjoin

such acts or practices, and upon a proper showing a temporary restraining order or a preliminary or permanent injunction shall be granted without bond. Any such court may also issue mandatory injunctions commanding any person to comply with any such order or regulation. In addition to such injunctive relief, the court may also order restitution of moneys received in violation of any such order or regulation.

ate the private remedy—for example, a right to contribution—that the plaintiff seeks to invoke. Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies.

*Northwest Airlines,* 451 U.S. at 91, 101 S.Ct. at 1580 (citations omitted). The statute itself provides the right of restitution to the government and the right to seek damages to private parties.[8] The underlying purpose of the statute, however, is fairness. This bedrock is seen in § 203, which mandates that the President issue standards that are "fair and equitable," and in Congress' change in § 209 to clarify that there is "an inherent equitable power in the court to set things right and order restitution." *See* the legislative history, P.L. 92–210, Economic Stabilization Act Amendments of 1971, S.Rep. No. 92–507, 92d Cong., 1st Sess. (1971), *reprinted in* 2, 1971 U.S.Code Cong. & Admin.News 2283, 2291. Can the court, with its inherent equitable power to "set things right," create a federal common law cause of action for restitution or reimbursement that extends beyond a government enforcement action?

 This court has indeed interpreted the statute and its legislative history to grant broad equitable powers of restitution to the district court.

Nor do we believe that Congress intended to limit the agency's and courts' power to restore overcharges. The legislative history indicates that the explicit reference to restitution in § 209 was to settle any doubt that "there was an inherent equitable power in the court to set things right and order restitution." ... There is no indication, however, that the section thereby attempts to limit the power of the courts or the agency to restitution or to a particularly strict interpretation of restitution. "Unless a

statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Porter v. Warner Holding Co.,* 1946, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332.

*Sauder,* 648 F.2d at 1348. We have recognized that the district court, "sitting at a Court of Equity, ... has the power to do equity and mould each decree to the necessities of the particular case." *Edwards,* 669 F.2d at 722. Its restitutionary task frequently was to cause a defendant "to disgorge illgotten gains or to restore the status quo." *Sauder,* 648 F.2d at 1348. The ESA has granted federal courts the authority to "set things right" by use of the federal common law of restitution.

The United States Supreme Court has recognized the need and authority for the courts to formulate "federal common law" in certain narrow instances "in which a federal rule of decision is 'necessary to protect uniquely federal interests' ... and those in which Congress has given the courts the power to develop substantive law." *Texas Industries,* 451 U.S. at 640, 101 S.Ct. at 2067. In *Northwest Airlines,* a case decided in the same term, the Supreme Court also held that:

> Broadly worded constitutional and statutory provisions necessarily have been given concrete meaning and application by a process of case-by-case judicial decision in the common-law tradition. The Court also has recognized a responsibility, in the absence of legislation, to fashion federal common law in cases raising issues of uniquely federal concern, such as the definition of rights or duties of the United States, or the resolution of interstate controversies.

*Northwest Airlines,* 451 U.S. at 95, 101 S.Ct. at 1582.

The district court found that federal petroleum price controls are a uniquely feder-

---

8. Private enforcement actions are governed by section 210, which provides, in pertinent part:

Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant there-

to, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief. ...

al interest. We agree. The ESA was established to stabilize prices in order "to stabilize the economy, reduce inflation, [and] minimize unemployment." ESA § 202. "The primary purpose of the ESA is to insure effective enforcement of the pricing regulations, on a national scale." *Edwards*, 669 F.2d at 721. It authorized the President to issue price control standards that were "generally fair and equitable," ESA § 203, and to delegate the implementation of those functions to federal agencies such as the DOE. ESA § 204. The DOE was then authorized to adjust its regulations "as a means of preventing 'special hardship, inequity or unfair distribution of burdens.' 42 U.S.C. § 7194." *Exxon Corp. v. Department of Energy*, 802 F.2d 1400, 1407 (Temp.Emer.Ct.App.1986) (authority created by ESA § 202 to make "such adjustments as may be necessary to prevent gross inequities").

Over the years that the ESA and subsequent corollary legislation have been in effect, the DOE and the courts have attempted an equitable balance of the impact of their regulations and decisions on the petroleum industry, the overcharge victims, and the parties involved. There is no question that such issues are of uniquely federal concern, and that the narrower issues presently before the court fall within the ambit of "uniquely federal interests" that must be protected. We therefore find that Congress has given the federal district court the broad equitable power to develop a federal common law of restitution, and also that such a federal common law is necessary to protect the uniquely federal interests involved in petroleum price controls.

This finding simply recognizes the expansive equitable authority that has long been applied by federal courts when making restitution for overcharges. For example, this court created the operator liability doctrine in order that the DOE could recover the total overcharge amount from one central figure (usually the owner-operator of the stripper well leases), even though that figure did not actually receive all the overcharges.

[W]e now hold that it is within the agency's authority to order an owner-operator in a situation such as Sauder's to make restitution of the total overcharge. By the same reasoning and in the absence of any specific statutory prohibition, we hold that the courts may enforce such an order under authority granted by the Economic Stabilization Act.... We do not grant the agency "carte blanche," *see Mobil Oil Corp. v. FPC*, 1973, D.C.Cir., 483 F.2d 1238, 1255, but merely enforce its effort sanctioned by the statute and its purposes, "to set things right."

*Sauder*, 648 F.2d at 1349. The court extended the rule to hold a corporation president personally liable for overcharges he caused as the "'animating force' behind the sale" of overpriced oil. *Citronelle–Mobile Gathering, Inc. v. Herrington*, 826 F.2d 16, 27 (Temp.Emer.Ct.App.), *cert. denied sub nom. Chamberlain v. U.S.*, 484 U.S. 943, 108 S.Ct. 327, 98 L.Ed.2d 355 (1987). And it used the same theory to hold a joint venture responsible for the entire overcharge amount. *Christmann & Welborn v. Department of Energy*, 773 F.2d 317, 321 (Temp.Emer.Ct.App.), *cert. denied*, 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985).

Without legislative direction in the ESA or EPAA, courts at the district and appellate levels have assumed the responsibility of setting things right by establishing an escrow account for the deposit of overcharges, *Edwards*, 669 F.2d at 722–23, and by ordering the distribution of the escrowed funds to the states as the appropriate method of restitution. *United States v. Exxon Corp.*, 773 F.2d 1240, 1286 (Temp.Emer.Ct.App.1985), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986). They also established the requirement that prejudgment interest be paid on overcharges, and that interest be calculated at the DOE rates, even though the statutes did not explicitly authorize such interest. *Id.* These are but a few examples of the rules and policies developed under the broad equitable power exercised by the courts to "set things right and order restitution." They were developed because the statute did not provide a comprehensive

remedial scheme, but instead permitted the court and the government to sculpt the appropriate means of restitution.

■ We return, then, to the question whether the court can recognize the federal common law remedy of restitution or reimbursement in a third-party complaint joined to a government § 209 enforcement action. We find that it can. Operator Mobil was held responsible for the entire amount of overcharges, with the implicit understanding that it then had recourse against other parties for reimbursement of parts of the overcharges. *See Exxon*, 773 F.2d at 1271 (citing *U.S. v. Exxon*, 561 F.Supp. 816, at 850 (D.C.D.C.1983) (because of operator's recourse, imposition of full responsibility on operator aids in enforcement of price controls without unfairness to operator)). *See also Sauder*, 648 F.2d at 1348 (common law restitution encompasses restoration of benefits unjustly received by third parties). An operator could seek recourse by recomputing the payments of other parties, or by deducting amounts from future royalty payments, as was suggested in *Exxon*. Or, if the Rule 14 requirements are met, it could seek recovery of "all or part of the [counterclaimant's] claim against the third-party plaintiff." Nothing in the statutes or in former judicial decisions forbids any of these actions.

It is true that this court has disapproved of the "commingling of private and agency enforcement devices," *Cities Service Co. v. Department of Energy*, 715 F.2d 572, 573–74 (Temp.Emer.Ct.App.1983), and has stated that a § 209 action for restitution is not the proper "vehicle for determination of [an operator's] rights against, or obligations to, third parties." *Exxon*, 773 F.2d at 1272.

> To find otherwise would only serve to embroil the agency in collateral matters, and "hinder, disrupt, and render torpid the statutory scheme for expedited enforcement of pricing controls."

*Id.* (citations omitted). For administrative ease and expediency an operator has been held solely liable for overcharges without a determination of whether the operator might be entitled to contribution from other parties. *Id.* Moreover, the court's desire to maintain separate public and private enforcement actions led to the denial of a class intervention in a § 209 proceeding to collect moneys owed them from the same defendant. *Van Vranken v. U.S. Department of Energy*, 882 F.2d 514, 517 (Temp.Emer.Ct.App.1989).

We have no intention of putting aside our separate treatment of public and private enforcement actions when it achieves our purpose of making restitution with dispatch. In this third-party action in which the complete interrelatedness of the counterclaim and the third-party claim are undisputed, however, our determination of both matters together will expedite rather than hinder the restitutionary goal of recovering illegal overcharges.

■ Restitution serves to disgorge the unjust enrichment of the wrongdoer and to restore the status quo. When equity demanded it the courts placed full personal liability on individuals who were "the primary instruments of illegal conduct." *See Herrington*, 826 F.2d at 27–28; *Sutton*, 795 F.2d at 1063. In their attempt to take advantage of what was considered a "loophole" in a maze of regulations, those "individuals gambled and lost." *Herrington*, 826 F.2d at 27. Because restitution includes the payment of taxes, *see Herrington*, 826 F.2d at 28, in this case we have used the same theories to hold responsible the primary instrument of the illegal retention of severance taxes: Koch, the party which, by withholding those funds from the escrow account and from Mobil, received the benefits of an unjustly received windfall gain.[9] *See Sutton*, 795 F.2d at 1063. Consequently, we hold Koch responsible

9. Overcharge refunds went to the states rather than to first purchasers because such a reimbursement to first purchasers "would result in inequities, inconsistent with the fundamental purpose of restitution under Section 209," and "would simply result in a windfall gain for that purchaser." *Exxon*, 773 F.2d at 1286. We will not now allow this first purchaser Koch a windfall gain by its retention of the severance tax refund.

for the entire amount of restitution [10] awarded by the district court: the amount of the tax refund and interest, the "benefit the wrongdoer enjoyed by having the use over the years of the money illegally obtained." *Herrington*, 826 F.2d at 29.

### C. *Delayed Payments*

Koch contends that its payments to Mobil on the 20th day of each month following the month of production were timely according to industry standard. According to Koch, Mobil is not entitled to summary judgment without meeting its burden or properly supporting its motion with evidence of Koch's delayed payments.

With its summary judgment motion Mobil submitted an exhibit summarizing the overcharge attributable to Koch's late payments. In its statement of facts the district court included this fact:

> 23. The sum of $470,295, calculated as of September 30, 1989, is attributable to interest accrued on Koch's delayed payments to Mobil of sums for deposit into escrow. See Doc. 1699, App. E, Second Aff. of R.R. Bates, Exh. 21.

743 F.Supp. at 1472. The court also stated:

> To the extent Koch failed to properly support its statement of disputed facts with citations to the record, those facts are deemed admitted. D.Kan. Rule 206(c).

743 F.Supp. at 1470. Because Koch submitted no evidence to refute the exhibit, the district court treated Mobil's facts as uncontroverted.

■ This court finds that Mobil, the party moving for summary judgment, fulfilled its burden of informing the court of the basis for its motion. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It submitted the exhibit, a business record,

as a portion of the affidavit of Mr. R.R. Bates, a manager of a Mobil subsidiary whose responsibilities included coordination and finalization of the accounting audit for Mobil's deposits to the M.D.L. 378 escrow.

■ The burden then shifted to Koch to set forth specific facts showing that there was a genuine issue for trial. Rule 56(e). It failed to do so when opposing Mobil's motion. Because Koch did not so respond, summary judgment was appropriately entered against Koch. "Without a demonstration of material facts that would have precluded summary judgment, we will not reverse the granting of summary judgment." *International Drilling and Energy Corp. v. Watkins*, 920 F.2d 14, 23 (Temp.Emer.Ct.App.1990).

■ Koch's proffer of an affidavit challenging Mobil's "late payments" claim was made with its motion for reconsideration of the summary judgment. It came too late. "[A] motion for reconsideration is an improper vehicle to introduce evidence previously available" to Koch when it opposed Mobil's summary judgment motion. *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir.1986). "Raising an issue in a motion for reconsideration does not save the issue for appeal." *Railway Labor Executives' Ass'n v. I.C.C.*, 894 F.2d 915, 922 n. 4 (7th Cir.1990). The district court did not abuse its discretion in denying Koch's motions for reconsideration. *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed.Cir.1990).

### D. *DOE Policy Rates*

■ Koch states that it prudently kept the tax refund until the proper claimants were determined. Since the case was resolved by settlement rather than by adjudication, Koch contends that the court erred

---

10. The federal common law of restitution has been the foundation for many of this court's judicial determinations, and the restitutionary remedy has often been reimbursement. In the early years there was "massive congressional, administrative and judicial action to insure maximum individual reimbursement for loss and, where that is impractical, appropriate reimbursement to the general class found to have

been adversely affected." *U.S. Dept. of Energy v. West Texas Marketing Corp.*, 763 F.2d 1411, 1419 n. 2 (Temp.Emer.Ct.App.1985) (Christensen, J., specially concurring). Eventually we disbursed the restitutionary funds to the states for reimbursement to the true victims of the overcharges, the public. *Edwards*, 669 F.2d at 722. Reimbursement is simply part of the federal common law remedy of restitution.

in ordering prejudgment interest and at the DOE rate.

Koch's cursory argument is without merit. This court has consistently held that a restitutionary award, which is intended to make the victims whole, includes severance taxes and prejudgment interest. *Lea Exploration*, 843 F.2d at 513. Restitution intends to restore victims to the status quo by reimbursing them for what they lost by not having the money available for their use. *In re: Stripper Well Exemption Litigation*, 944 F.2d 914, 916 (Temp.Emer. Ct.App.1991); *Herrington*, 826 F.2d at 29. The DOE policy rates reasonably reflect the cost of money, and should be applied uniformly. *Stripper Well*, 944 F.2d at 16. Koch has offered no compelling reasons to the contrary. We therefore affirm the district court's award of severance taxes and delayed payments, including interest calculated at the DOE policy rates.

## IV. CONCLUSION

The district court has fashioned a federal common law of restitution or reimbursement in response to Congress' statutory mandate that the court order restitution and set things right. The ruling below, which required Koch to reimburse Mobil for the deficient escrow funds that Koch itself had retained and from which it had benefited, indeed set things right. Because the ESA has not provided a comprehensive remedial scheme, the court has properly used its broad equitable powers to protect the uniquely federal area of petroleum price controls at the same time that it disgorged an unjust enrichment from a wrongdoer and returned the status quo.

Since Mobil's third-party complaint arose from the same set of facts and was derivative of the DOE's counterclaim in the original action, we hold that Mobil properly impleaded Koch under Fed.R.Civ.P. 14(b). We also conclude that Mobil's complaint stated a valid claim upon which relief could be granted, and we uphold the district court's finding of liability based on the federal common law of restitution or reimbursement.

Finding no error in the district court's restitutionary award, which included the severance tax refund, Koch's late payments, and prejudgment interest calculated at the DOE policy rates, we AFFIRM the decision of the district court.