**MURPHY EXPLORATION & PRODUCTION COMPANY, Plaintiff–Appellant,**

v.

**ORYX ENERGY COMPANY, Defendant–Appellee.**

No. 96–1108.

United States Court of Appeals, Federal Circuit.

Nov. 22, 1996.

Jerry E. Rothrock, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, argued, for plaintiff-appellant. With him on the brief, were Michael K. Swan, C. Fairley Spillman, and John C. Crespo. Of counsel on the brief, was James R. Nieset, Plauche, Smith & Nieset, Lake Charles, LA.

James Baller, The Baller Law Group, Washington, DC, argued, for defendant-appellee. With him on the brief, was Lana L. Meller. Of counsel on the brief, was J. Michael Veron, Jr., Scofield, Gerard, Veron, Singletary & Pohorelsky, Lake Charles, LA.

Before RICH, NEWMAN, and BRYSON, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Murphy Exploration & Production Company (Murphy[1]) seeks reimbursement from Oryx Energy Company (Oryx[2]) of certain sums that Murphy paid the Department of Energy (DOE) in settlement of litigation concerning violation of the Economic Stabilization Act of 1970 (ESA), 12 U.S.C. § 1904 note, *incorporated in* the Emergency Petroleum Allocation Act (EPAA), 15 U.S.C. § 754(a)(1). Murphy states that it was required to make restitution to the DOE for overcharges that in fact were charged and received by Oryx as owner of working interests in oil leases operated by Murphy. Oryx

---

1. "Murphy" may include Murphy's predecessors including ODECO Oil & Gas Company and Ocean Drilling & Exploration Company.

2. "Oryx" may include its predecessors including Sun Exploration and Production Company.

responds that Murphy can not be deemed to have been charged by the DOE for the Oryx overcharges or to have made restitution on behalf of Oryx, because Oryx had previously settled with the DOE and had paid restitution for all of the overcharges for which it was liable.

On cross-motions for summary judgment, the District Court for the Western District of Louisiana held that Murphy was not entitled to the requested reimbursement.[3] This appeal followed. We affirm.

## BACKGROUND

From August 19, 1973 until January 28, 1981, Murphy operated various oil and gas leases off the coast of Louisiana in the Ship Shoal Block 113 and South Pelto Block 20 fields. These leases were subject to the ESA/EPAA price controls. Oryx owned non-operating working interests in several of these leases, and took in kind and sold its share of the product. In 1975 the DOE began its audit of Murphy's activities, and issued a Remedial Order on June 17, 1992. Relying on the "operator liability doctrine," the Remedial Order assessed Murphy for restitution of the full amount of alleged overcharges based on all the oil produced and sold from the leases during the relevant period, whether sold by Murphy or taken in kind and sold by the working-interest owners.

In accordance with the operator liability doctrine the DOE has under certain circumstances held the operator liable for overcharges attributed to sales made by working-interest owners, without regard to whether the operator itself made the overcharges or received the proceeds. The operator liability doctrine has been imposed when the operator is the "animating force" or "central figure" and thus is deemed to have caused the overcharges, or when the operator is made liable as a matter of administrative convenience to the government enforcement effort. *Murfin v. Department of Energy*, 90 F.3d 1551, 1555 (Fed.Cir.1996). The DOE proceeded against Murphy on the "central figure" theory, stating in the 1992 Remedial Order that "The ERA [Economic Regulatory Administration]

has also established a *prima facie* showing that Murphy or ODECO was a 'central figure' in setting prices for in-kind oil sales from these properties, and should therefore be liable for resulting overcharges under the operator liability doctrine."

Murphy appealed the Remedial Order to the Federal Energy Regulatory Commission. The Commission's administrative law judge found that the DOE had not established that price violations had occurred on sale of the oil taken in kind by the working-interest owners. The ALJ also found that "the evidence of record does not establish that [Murphy] caused any of the in-kind takers' overcharges, if such overcharges in fact occurred." *Ocean Drilling & Exploration Co.*, 66 FERC (CCH) ¶ 63,002, 1994 WL 18600, *24 (1994). The ALJ ordered modification of the Remedial Order to reduce Murphy's liability from the government's asserted $70 million to about $5 million, none of which was attributed to overcharges on oil taken and sold by owners of working interests. *Id.*

The DOE appealed the ALJ's decision to the full Commission. Before the appeal was heard Murphy and the DOE entered into a settlement agreement effective September 15, 1994. The DOE agreed to dismiss all charges against Murphy for a total payment of $10.7 million. Murphy then sought reimbursement from the working-interest owners for a proportionate share of this liability. However, during the settlement negotiations, of which Murphy had notified the working-interest owners, Oryx had notified Murphy that it had already extinguished its entire liability in an independent settlement with the DOE. Thus Oryx refused to contribute to Murphy's settlement.

Murphy brought suit against Oryx in the district court, invoking federal common law as the basis for Oryx's obligation to reimburse Murphy based on Oryx's working interest share. Murphy relied on *Koch Industries, Inc. v. Mobil Oil Corp.*, 968 F.2d 27, 37 (Temp.Emer.Ct.App.1992),[4] wherein the

---

3. *Murphy Exploration & Production Co. v. Oryx Energy Co.*, No. 94–1696 (W.D.La. Aug. 9, 1995).

4. The Federal Circuit has adopted the precedent of the Temporary Emergency Court of Appeals, as successor to that court's jurisdictional assign-

court recognized the operator's entitlement to recover from "other parties" for restitution levied by the DOE under the operator liability doctrine. As an alternative theory of recovery, Murphy relied on an express indemnity contained in a January 19, 1984 Agreement of Sale and Purchase whereby Oryx sold its working interest in the Ship Shoal leases to Murphy, the operator. The agreement provided that Oryx shall "indemnify and hold harmless" Murphy for

> liabilities [that] shall include, but not be limited to, all refund obligations, fines, penalties, or payments to be made of any kind due to the price received by [Oryx] for the sale of crude oil, condensate and natural gas or for services connected therewith.

Despite this indemnity obligation, Oryx's position is that Murphy's claim for reimbursement is defeated by a September 1980 Consent Order between the DOE and Oryx which settled all claims "arising out of [Oryx's] compliance with the federal petroleum price and allocation regulations." Oryx states that this Consent Order resolved all claims that the DOE had or could raise concerning Oryx's compliance with the petroleum price controls during the covered period. Oryx states that because its entire liability under the ESA/EPAA was extinguished in 1980, there were no remaining obligations to Murphy in 1984 under the indemnity clause, and no remaining obligations to the DOE that Murphy could have settled in 1994. Murphy responds that the DOE continued to assess Murphy as operator for Oryx's overcharges and, despite the holding of the ALJ that there were no Oryx overcharges attributable to Murphy, the DOE had not abandoned its position that it could recover from Murphy despite the settlement with Oryx.

The district court held that the 1980 Consent Order was a complete defense to Murphy's claim for reimbursement. The court stated that Murphy did not discharge any obligation of Oryx to the DOE because "any alleged wrongdoing on Oryx's behalf has already been expiated by the [Oryx] consent ment. *Texas American Oil Corp. v. United States Department of Energy,* 44 F.3d 1557, 1561 (Fed.

order." The district court also held that the 1984 indemnity clause between Murphy and Oryx did not apply to Murphy's 1994 settlement and payment to the DOE, even were a portion of that payment attributable to overcharges by Oryx. The court applied Louisiana law that provides that an indemnitee shall not be indemnified for its own negligence absent an express agreement calling for such indemnification. Finding no such provision in the 1984 Agreement, on this alternative ground the court held that Murphy could not recover from Oryx.

## DISCUSSION

 Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Upon such motion, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in its favor. *Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When both parties move for summary judgment, grant of the motion in favor of one party must satisfy this rule concerning factual inferences; cross-motions do not change the requirement that all justifiable inferences must be drawn in favor of the losing party. *See, e.g., Scripps Clinic & Research Found. v. Genentech,* 927 F.2d 1565, 1576, 18 USPQ2d 1001, 1005 (Fed.Cir.1991). We give plenary appellate review to the grant of summary judgment. *MAPCO Int'l Inc. v. Federal Energy Regulatory Comm'n,* 993 F.2d 235, 239 (Temp.Emer.Ct.App.1993).

The 1980 Consent Order between Oryx and the DOE resolved Oryx's liability for petroleum overcharges during the relevant period. However, Murphy argues that it is implicit in the operator liability doctrine that the operator has the right to contribution from the working-interest owners who actually received the overcharges, even if the working-interest owners previously had set-

Cir.1995) (*en banc*).

tled with the DOE. Murphy states that *United States v. Exxon Corp.*, 773 F.2d 1240 (Temp.Emer.Ct.App.1985), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 893, 88 L.Ed.2d 926 (1986) and *Koch Industries v. Mobil*, 968 F.2d 27, support this result, for these cases permitted the imposition of liability on the operator whether or not the operator benefitted from the overcharges by working-interest owners.

However, neither *Exxon* nor *Koch* established an unqualified right to contribution. Exxon was held liable on the basis that it "caused" the overcharges of its working-interest owners, some of whom had settled with the DOE; however, the issue of Exxon's right to obtain contribution was not before the court. *See Exxon*, 773 F.2d at 1277 n. 36 ("issues pertaining to Exxon's right of contribution, if any, from third parties are not now a subject of consideration by this Court").

In *Koch* the court required Koch Industries to reimburse Mobil for sums that Mobil had been required to pay the DOE based on a severance tax refund received by Koch. The court found that Koch had enjoyed the benefits "of an unjustly received windfall gain." *Koch*, 968 F.2d at 37. Although Murphy states that Koch had made a global settlement agreement with the DOE, similar to that of Oryx, but was still required to reimburse Mobil, the decisions in *Koch* did not mention such a settlement, and in all events the reimbursement was not for overcharges but for a direct share of a tax refund. *Koch* and *Exxon* established no more nor less than that the right of contribution depends on the particular facts, and is imposed when justice requires.

In the *Exxon* decision the Temporary Emergency Court of Appeals did not view settlements by working-interest owners as "irrelevant" to reimbursement, despite the opinion of the district court in *Exxon Corp. v. Jarvis Christian College*, 1991 WL 771247, 1991 U.S. Dist. LEXIS 4274 (E.D.Tex. Feb. 15, 1991). As discussed in *Conoco Inc. v. Department of Energy*, 99 F.3d 387, 396 (Fed.Cir.1996), wherein this court remanded for determination of the effect of certain global settlements on the DOE's ability to recover from Conoco, the DOE conceded that it is not entitled to double recovery. The DOE made a similar concession in *Sun Co. v. United States*, No. 83–204–JRR, slip op. at 4–5 (D.Del. Oct. 21, 1991) wherein, responding to the DOE's suits against various operators for recovery of overcharges received by Oryx as working-interest owner, the district court stated, in granting partial summary judgment, that "the DOE has conceded, both in its briefs and at oral argument that the consent order bars the DOE from suing operators for [Oryx's] own violations of applicable pricing regulations." Indeed, double recovery is inimical to the statutory purpose of restitution.

This case is for reimbursement as between operator and working-interest owner, and the question of double recovery is fundamental to Murphy's entitlement to reimbursement, for if Oryx had in 1980 settled its entire liability for restitution, Murphy's 1994 settlement could not have included Oryx's overcharges. It was thus before the district court to decide whether Oryx, in its 1980 settlement with the DOE, had included its liability if any for its working interests in Murphy's fields; whether Murphy, in its settlement with the DOE, had paid for Oryx's overcharges flowing from its working interests in Murphy's field; and the significance of the 1984 indemnity agreement between Oryx and Murphy.

The district court interpreted the various agreements and, where appropriate, made findings concerning the intent of the parties. Thus the district court started with Oryx's 1980 Consent Order with the DOE. The Order includes the following provision:

> All pending and potential claims, whether or not known, demands, liabilities, causes of action or other proceedings by DOE regarding [Oryx's] compliance with the federal petroleum price and allocation regulations during the period covered by this Consent Order, whether or not heretofore raised by [DOE] are resolved and extinguished by this Consent Order, with the exception of [certain itemized matters not here relevant].

This comprehensive clause extinguished all Oryx liability for "pending and potential claims, whether or not known." It appears that the DOE nonetheless charged Murphy

with operator liability for Oryx's overcharges. The record contains no explanation of this action, or of its continuance even after the Delaware district court's action in 1991, several months before the DOE's 1992 Remedial Order wherein the DOE refers to Oryx as a working-interest owner for whose overcharges Murphy was being held liable by the DOE. Nonetheless, Murphy was aware of this Oryx history and made its own settlement with the DOE in this context.

■ Murphy's settlement in 1994 was in the context of the ALJ's ruling that the DOE had not proven overcharges by the working-interest owners, the Delaware court's ruling, and Oryx's explicit notice to Murphy of its position and the basis thereof. On these facts, we discern no error in the district court's determination that Murphy's settlement did not include restitution on behalf of Oryx and thus that Murphy has no entitlement to reimbursement from Oryx.

*THE INDEMNITY AGREEMENT*

■ The 1984 Agreement between Murphy and Oryx contains a broad indemnity provision, as quoted *supra*. Although the parties dispute the purpose and scope of that indemnity, in view of all of the events concerning Oryx, Murphy, and the DOE, we conclude that the 1984 Agreement was not a commitment by Oryx to make a contribution to restitution by Murphy, absent liability attributed to Oryx. The overall relationships involving Oryx, Murphy, and the DOE, as they appear on this record, favor the conclusion that the overcharges attributable to Oryx's working interests had been settled with Oryx, and not again paid by Murphy. Thus the 1984 Agreement did not create an obligation of reimbursement of a share of Murphy's 1994 settlement with the DOE. In view of this conclusion, we do not reach the indemnity issues under Louisiana law, as relied upon by the district court.

The decision of the district court is affirmed.

Taxable costs to Oryx.

*AFFIRMED.*